NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHRISTINE DONNELLY AND KEVIN J. DONNELLY, | : : : | Civil Action No. 11-7019 (ES) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| OPTION ONE MORTGAGE CORPORATION, *et. al.,* | : : : | |
| Defendants. | : : | |

**SALAS, DISTRICT JUDGE**

Pending before this Court are Option One Mortgage Corporation ("Option One") and Necto Inc.'s ("Netco") motions to dismiss Christine Donnelly and Kevin Donnelly's (collectively, "Plaintiffs") Amended Complaint[1] pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). (D.E. No. 50, Netco's Brief in Support of Motion to Dismiss ("NMTD"); D.E. No. 51, Option One Brief in Support of Motion to Dismiss Plaintiffs' Amended Complaint ("OMTD")). The Court has jurisdiction under 28 U.S.C. § 1332(a). The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss as to Counts one through nine in Plaintiffs' Amended Complaint.

---

[1] The docket lists the Amended Complaint as docket number forty-one. (*See* D.E. No. 41). However, the Amended Complaint is actually docket number 48. (*See* D.E. No. 48).

## I.    Background

Plaintiffs allege that they were victims of a predatory lending scheme perpetrated by, in part, defendants Netco and Option One.  (D.E. No. 48, Amended Complaint and Jury Demand ("Compl.") ¶¶ 31, 115).  In 2006, defendant Mortgage Tree Lending Corporation ("MTLC") approached Plaintiffs to refinance their mortgage on residential property located at 690 Devon Street, Kearny, New Jersey.  (*Id*. ¶¶ 1, 16).  At that time, Plaintiffs were current on their mortgage and had no interest in refinancing unless they could reduce their loan interest rate and monthly mortgage payments.  (*Id*. ¶¶ 17-18).  Plaintiffs requested a $323,000 fixed rate mortgage loan with an interest rate of 7.5% and a monthly payment of no more than $2,300.  (*Id*. ¶ 19).  Netco, acting as the settlement agent for Option One, presented Plaintiffs with an adjustable mortgage rate note for $323,000 with a beginning interest rate of 9.7% and an initial monthly payment of $2,700.  (*Id*. ¶ 29.).  This note was made payable to MTLC.  (*Id*.).  Netco never explained the discrepancies between the mortgage loan provided and the loan produced at closing.  (*Id.* ¶ 30).  Also, a copy of the loan or loan documents was never provided to the Plaintiffs.  (*Id*. ¶ 32).

Plaintiffs executed the loan and two allonges on October 25, 2006.  (*Id*. ¶ 33).  The allonges directed that all mortgage loan payments be made to Option One and that the mortgage loan was made "without recourse."[2]  (*Id*. ¶¶ 35-36).  Plaintiffs allege that Option One should have been aware that they "were not qualified for the MTLC mortgage loan" and that "Option One was aware or should have been aware of the misrepresentations made by MTLC to induce the [P]laintiffs into executing a mortgage note that they did not bargain for."  (*Id*. ¶¶ 38-39).

---

[2] "Without recourse" is a term used by people familiar with the secondary mortgage market and is generally found as a clause in a sales contract from a mortgage lender to a mortgage investor. (Compl. ¶ 36). "Without recourse" means "the seller/lendor is under no obligation to reimburse the buyer/investor for any losses resulting from the purchased loans."  (*Id*.).

Plaintiffs also allege that MTLC told them they could refinance in six months but that MTLC "knew or should have known that the [P]laintiffs would not qualify to refinance [in] six months." (*Id.* ¶ 42).

Plaintiffs made their first two mortgage payments to Option One in accordance with the mortgage loan but allege that Option One did not properly credit the payments. (*Id.* ¶¶ 52-53). Option One refused to review the payment history when contacted by Plaintiffs and subsequently filed a foreclosure complaint against the Plaintiffs in April 2007 without providing proper written notice. (*Id.* ¶¶ 55-57). Plaintiffs, attempting to remediate the alleged default, contacted Option One and learned it had contracted GRP to service some of its mortgage loans, including the Plaintiffs'. (*Id.* ¶ 60-61). Plaintiffs contacted GRP who requested that Plaintiffs pay a lump sum of $8,000 and monthly payments of $3,000 in order to become current on the mortgage loan. (*Id.* ¶¶ 63-64). In July 2007, Plaintiffs paid GRP $8,000 and begin making $3,000 monthly payments. (*Id.* ¶ 69). Plaintiffs aver that GRP "told [them] that . . . if these payments were made the foreclosure action would be discontinued" and that GRP "knew or should have known that these statements were false." (*Id.* ¶¶ 65-66).

In 2008, GRP informed the Plaintiffs that Option One required them to sign a forbearance agreement which necessitated a lump payment of $21,000 and monthly payments of $3,000 for another year. (*Id.* ¶ 72). GRP represented that if Plaintiffs made payments in accordance with the forbearance agreement that they would not have to defend the foreclosure action brought against them. (*Id.* ¶ 74). The forbearance agreement also "placed the foreclosure action in abeyance and prohibited [Option One or GRP] from prosecuting the complaint during the pendency of the agreement." (*Id.* ¶ 80). Based on those representations, Plaintiffs signed the mortgage forbearance agreement in April 2008 and made payments accordingly thereafter until

February 2009. (*Id.* ¶ 79). During that time period, Plaintiffs allege that neither Option One nor GRP informed them that their payments were late or that Option One was continuing the foreclosure action against the Plaintiffs. (*Id.* ¶¶ 84-85).

Notwithstanding the terms of the forbearance agreement and Plaintiffs' timely payments, Option One entered a final judgment against the Plaintiffs in the foreclosure action and obtained a Writ of Execution against the Plaintiffs' property. (*Id.* ¶¶ 87, 89). Plaintiffs contend that the forbearance agreement prohibited these actions and that Option One "intentionally prosecuted its foreclosure action against the [P]laintiffs in violation of the [f]orbearance [a]greement." (*Id.* ¶ 95). At the conclusion of the forbearance agreement, Plaintiffs were ready to resume making monthly payments on their mortgage note. (*Id.* ¶ 98). However, GRP told Plaintiffs that they were "required to make a balloon payment of $21,000." (*Id.* ¶ 99). Plaintiffs allege that no such balloon payment is required by the forbearance agreement and "[they] were financially unable to make such a [balloon] payment." (*Id.* ¶¶ 100, 102). Plaintiffs claim they fulfilled their obligations under the forbearance note and requested that Option One honor its obligations to allow resumption of normal mortgage payments. (*Id.* ¶ 104).

Option One continued to prosecute the foreclosure action against Plaintiffs and thereafter Plaintiffs retained counsel to defend against the action. (*Id.* ¶¶ 105, 108). On October 3, 2011, the Honorable Judge Thomas Olivieri of the Superior Court of New Jersey, Hudson County, "vacated final judgment obtained by . . . Option One against the [P]laintiffs [and] [t]he foreclosure action was thereafter dismissed." (*Id.* ¶ 109). Plaintiffs allege that "Option One knew or should have known . . . [P]laintiffs were being misled about essential loan terms" and that "Option One engaged in. . . predatory lending." (*Id.* ¶¶ 110, 115).

Based on these facts, Plaintiffs filed suit in New Jersey Superior Court, Hudson County Law Division, on October 11, 2011 against Option One, MTLC, GRP, Netco, and other Defendants not described in the facts laid out herein. On December 1, 2011, the suit was removed to this Court. (D.E. No. 1, Notice of Removal). Option One filed a motion to dismiss on February 16, 2012, and on September 26, 2012, this Court granted that motion without prejudice. (D.E. No. 46, Opinion). Plaintiffs amended their Complaint and re-filed on October 12, 2012. Netco and Option One filed the instant motions to dismiss on November 16, 2012. (D.E. Nos. 50 & 51).

## II.     Legal Standard

### A.     Motion to Dismiss for Failure to Comply with Rule 9(b)

Netco and Option One seek dismissal of Counts one and two of Plaintiffs' Amended Complaint on the basis that they fail to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b). Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud, including claims under the New Jersey Consumer Fraud Act, over and above that required by Fed. R. Civ. P. 8(a). *See, e.g.*, *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *29 (D.N.J. July 21, 2011).

Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The intended purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotations omitted); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this standard, the plaintiff must

plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d. Cir. 2004) (internal citation omitted); *Wiatt v. Winston & Strawn, LLP*, 838 F. Supp. 2d 296, 316 (D.N.J. 2012) ("The plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made.") (internal quotations omitted).

**B.      Motion to Dismiss for Failure to State a Claim**

Netco and Option One seek dismissal of Counts three through nine of Plaintiffs' Amended Complaint on the basis that they fail to state a claim under Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 231 (3d Cir. 2008); *Burrell v. DVS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010) (ruling that contradictory factual assertions on the part of the defendant must be ignored).  A complaint must include factual allegations which "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In reviewing a complaint under a (12)(b)(6) motion to dismiss, the Supreme Court has identified a two-step process to determine if a complaint "raise[s] a right to relief above [a] speculative level."  *Id.*  First, a court must identify any conclusory allegation, as they are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Second, the court must consider if the non-conclusory, factual allegations of the complaint, given the assumption of truth, "plausibly suggest an entitlement to relief." *Id.*

at 681. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. Discussion

### A. Count I: Violation of the New Jersey Consumer Fraud Act ("NJCFA")

The NJCFA makes unlawful:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J. Stat. Ann. § 56:8-2 (West 2013).

To establish a claim under the NJCFA, a plaintiff must plead "(1) unlawful conduction by the defendant; (2) an ascertainable loss by the plaintiff; [and] (3) a causal relationship between the unlawful conduct and the loss." *Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 165 (3d Cir. 2007); *see also Glass v. BMW of N. Am.*, No. 10-5259, 2011 WL 6887721, at *8-11 (D.N.J. Dec. 29, 2011). The Supreme Court of New Jersey has held that "the Act should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, A.2d 454, 461 (N.J. 1994). However, "breach of contract . . . is not per se unfair or unconscionable" and "alone does not violate a consumer protection statute." *Id.* at 462 (citing *D'Ercole Sales v. Fruehauf Corp.*, 501 A.2d 990, 998 (N.J. Sup. Ct. App. Div. 1985)).

Claims brought under the NJCFA "are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, WL 141628, at *2 (D.N.J. Jan. 14, 2008). Plaintiff must plead each NJCFA claim with the requisite specificity to "place the defendant on notice of the unlawful conduct for which it is charged."

*Frederico*, 507 F.3d at 200. Specificity has been further described by the Third Circuit as the "date, place or time of the fraud" or through some "alternative means of injecting precision and some measure of substantiation into [the] allegation[n] of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d. Cir. 2004) (internal quotations and punctuation omitted). "Plaintiffs must also allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id*.

To satisfy the specificity requirement of Rule 9(b), NJCFA claims also cannot "contai[n] collectivized allegations against 'defendants'" because "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999). "A plaintiff must plead fraud with particularly with respect to each defendant [to] infor[m] each defendant of the nature of its alleged participation in the fraud." *Id*. In some circumstances, collective pleadings of fraud may be appropriate where "defendants are . . . similarly situated and . . . engage in similar . . . conduct." *Lind v. New Hope Prop., LLC*, No. 09-3757, 2010 WL 1493003, at *4 (D.N.J. Apr. 13, 2010).

### 1.    Count I against Netco

Plaintiffs allege that Netco violated the NJCFA during its involvement with the mortgage loan process because it: 1) "failed to explain the discrepancies between the mortgage loan promised by MTLC and the adjustable rate note produced"; 2) "coerced [P]laintiffs into signing the mortgage note stating that the refinance proceeds would be used in part to pay off [sic] their mortgage"; 3) "did not give the [P]laintiffs a copy of any executed closing document"; and 4) "close[d] a mortgage loan where the borrower expressed dissatisfaction about the terms of the

loan presented at closing."[3]  (Compl. ¶¶ 30-32, 50).  Netco argues that "Plaintiffs fail to allege

that Netco violated the NJCFA" or "sufficiently state a claim for relief" and therefore Count I

should be dismissed.  (NTMD at 5).

Count I of the Amended Complaint fails because it does not ascribe with particularity the

alleged fraudulent behavior of Netco as required under the NJCFA.  Plaintiffs concede that

Netco was only the settlement agent for the mortgage loan made by MTLC and assigned to

Option One, so the sufficiency of the pleading turns on the degree to which Plaintiffs allege that

Netco was involved in that transaction.  (*Id.* ¶ 28).  However, Plaintiffs' Amended Complaint

only provides tangential allegations of involvement by Netco in the mortgage loan.  Plaintiffs

argue that Netco failed to explain discrepancies between mortgage loans and did not provide

closing documents.  However, Plaintiffs do not allege such activity was illegal or that, even

assuming such activity was illegal, that such acts caused the Plaintiffs an ascertainable loss —

required elements of any claim under the NJCFA.

The other allegations in Count I of the Amended Complaint against Netco also fail

because they do not put Netco on notice of what *specific* fraudulent claims it made to Plaintiffs.

Rule 9(b) requires a plaintiff to plead with particularity so that a defendant is put on notice of the

fraudulent claims he or she is accused of making.  Here, Plaintiffs merely state that Netco was

tangentially involved in the mortgage loan transaction, then cast a wide claim of "false promises

---

[3] Plaintiffs further outline the factual allegations of the Amended Complaint in their Opposition
to Defendants' Motion to Dismiss. (D.E. No. 53, Opposition of Plaintiffs to Defendants' Motion
to Dismiss ("Opp.")). In fact, the Opposition Brief, in its preliminary statement, lays out almost
ten pages of facts.  (*See id.* at 2-12). When considering a motion to dismiss, the Court "may not
consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114
F.3d 1410, 1426 (3d Cir. 1997). Consequently Plaintiffs' inclusion of this extensive preliminary
statement in their Opposition Brief is futile in so far that it may attempt to cure any deficiencies
in factual allegations contained in the Amended Complaint. *See Commonwealth of Pa.* ex. rel.
*Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the
complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal
quotations omitted).

and misrepresentations" against all Defendants. (*Id*. ¶ 121). Such a claim does not satisfy the "date, place or time" requirement of a Rule 9(b) pleading, nor does it "injec[t] precision and some measure of substantiation into [the] allegatio[n] of fraud." *Lum*, 361 F.3d at 224. Accordingly, Count I of the Amended Complaint against Netco is dismissed pursuant to Rule 9(b) for failure to meet the heightened pleading requirements for a claim of fraud.

### 2. Count I Against Option One

### i. Violation of the NJCFA Concerning the Mortgage Note

Plaintiffs argue that "[D]efendants [sic] Option One, John Does and ABC Corporations made false promises and misrepresentations to the [P]laintiffs concerning the material terms of the subject mortgage note," and that "[P]laintiffs reasonably relied on the misrepresentations of [D]efendants." (Compl. ¶¶ 121, 123). In opposition, in its motion to dismiss, Option One contends that "[s]uch bare-bone statements which lump together multiple defendants are facially inadequate to meet Rule 9(b)'s particularity requirement." (OMTD at 13-14). Option One further alleges that "Plaintiffs could not have relied on any representations made by Option One" because "Option One did not even enter into the transactional picture until after the closing and the purported misrepresentations that led Plaintiffs to enter into the transaction were made." (*Id*. at 14).

The Court finds that Count I of the Amended Complaint concerning the mortgage note fails because it does not meet the heightened pleading requirements for a claim made under the NJCFA. Plaintiffs concede that MTLC did not assign the mortgage note to Option One until November 2, 2006, (Compl. ¶ 58), so the sufficiency of Plaintiffs' claim under the NJCFA with regards to the mortgage note turns on the degree to which Option One was involved with the transaction before the assignment occurred. (Compl. ¶ 58). Plaintiffs claim that "Option One

was aware or should have been aware of the terms of the [Plaintiffs'] mortgage loan prior to closing." (*Id*. ¶ 37). Further, "Option One was aware or should have been aware that the [P]laintiffs were not qualified for the MTLC mortgage loan," and "Option One was aware or should have been aware of the misrepresentations made by MTLC to induce the [P]laintiffs into executing [the] mortgage note . . . ." (Compl. ¶¶ 38-39).

These allegations, without more, cannot sustain a claim under the NJCFA. Plaintiffs claim that Option One knew or should have known about the terms of MTLC's mortgage loan. However, the heightened pleading requirements of Rule 9(b) require more particularity. Plaintiffs do not allege what Option One knew or how that knowledge sufficiently tied Option One to the mortgage loan prior to assignment on November 2, 2006. Plaintiffs make no allegations of *why* Option One should have known about Plaintiffs' financial situation. Plaintiffs also fail to identify *how* specific misrepresentations Option One made with regards to the mortgage loan harmed Plaintiffs or were illegal — requirements of a valid claim under the NJCFA. Accordingly, Count I of the Amended Complaint against Option One regarding the mortgage loan is dismissed pursuant to Rule 9(b) for failure to meet the heightened pleading requirements for a claim of fraud.

### ii.     Violation of the NJCFA Concerning the Forbearance Agreement

Plaintiffs argue that "[D]efendants GRP and Option One made false representations about the terms and conditions of the [f]orbearance [a]greement entered into with the [P]laintiffs" and that "[P]laintiffs reasonably relied on the misrepresentations of [D]efendants." (Compl. ¶¶ 122-123). In opposition, in its motion to dismiss, Option One contends that "Plaintiffs . . . do not attribute any unlawful conduct with regard to the [f]orbearance [a]greement to Option One" and

that "Plaintiffs do not plead with particularity what false statements Option One made about the [f]orbearance [a]greement." (OMTD at 15-16) (internal quotations omitted).

The Court finds that Count I of the Amended Complaint concerning the forbearance agreement fails to plead with the requisite particularity required by Rule 9(b). Plaintiffs allege that Option One entered into a forbearance agreement with Plaintiffs and that, despite that, "[b]oth . . . Option One and GRP told the [P]laintiffs that they would not have to defend the foreclosure action as long as they abided by the terms of the [f]orbearance [a]greement." (Compl. ¶¶ 70, 74). Plaintiffs contend that "GRP knew or should have known that the statements made to the [them] regarding the forbearance agreement were false" and that "[d]uring the pendency of the [f]orbearance [a]greement . . . Option One continued the foreclosure action against the [P]laintiffs." (Compl. ¶¶ 75, 85).

Plaintiffs, however, do not allege any unlawful action specifically taken by Option One. Plaintiffs claim "Option One and GRP told [them] not to defend the foreclosure complaint" but fail to levy particular claims at particular defendants.[4] The Plaintiffs allege that the acts of GRP make Option One liable under the NJCFA because of privity,[5] but the Court finds no factual allegations in the Amended Complaint to support such an allegation.[6] Plaintiffs also fail to allege that any damages they suffered shared a causal connection with any unlawful action taken by Option One. Because Plaintiffs fail to point to specific unlawful action by Option One regarding the forbearance agreement to support a claim under the NJCFA, Count I of the Amended Complaint against Option One is dismissed.

---

[4] The Plaintffs' original complaint under the NJCFA was dismissed for this reason. (*See* Opinion at 9).

[5] Plaintiffs cite *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1003 (N.J. 2011). (*See* Opp. at 18).

[6] Plaintiffs lay out factual support for this assertion in their Opposition Brief, but the Court cannot consider these claims. *See supra* note 3 and accompanying text.

### B. Count II: Common Law Fraud

Plaintiffs allege common law fraud against Netco and Option One. The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Claims of common law fraud are subject to the pleading standards of Rule 9(b), so, at a minimum, the "circumstances constituting fraud" must be plead with sufficient particularity. Fed. R. Civ. P. 9(b). However, the Third Circuit has "relaxed [Rule 9(b)] when factual information is peculiarly within the defendant's knowledge or control" because "in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs." *Craftmatic Sec. Litig. V. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).

#### 1. Count II against Netco

Plaintiffs contend that Netco engaged in common law fraud with regard to the mortgage loan transaction by failing to explain discrepancies between mortgage loans, failure to provide closing documents, and through "misrepresentations made by [Netco] [that] caused [P]laintiffs to enter in the mortgage transactions." (Compl. ¶¶ 30-32, 127). In opposition, in its motion to dismiss, Netco contends Plaintiffs "failed to inject precision or some measure of substantiation into their common law fraud claim"; therefore, the claim must be dismissed. (NMTD at 8).

The Court concludes that Count II of the Amended Complaint against Netco fails to satisfy the more stringent pleading requirements of Rule 9(b) because: 1) the Amended Complaint fails to allege the misrepresentations by Netco with any particularity; and 2) the

Amended Complaint fails to adequately establish the requisite elements required to sustain a claim for common law fraud.

Plaintiffs claim that Option One, through Netco, "coerced [them] into signing the mortgage note." (Compl. ¶ 31). Yet Plaintiffs provide no support beyond that conclusory statement to bolster this claim. Plaintiffs allege that "Netco did not give [them] a copy of all the loan documents" but fail to state when this occurred, where this occurred, or who at Netco made fraudulent statements — all necessary to satisfy the heightened pleading requirements for fraud.

Second, Plaintiffs have not argued the factual elements necessary to sustain a claim of common law fraud. Plaintiffs do not contend that the failure to provide documents or the failure to explain the discrepancies between the two mortgage loans were material misrepresentations of fact, or that Netco knew such misrepresentations were false, or that Netco made such misrepresentations with the intent to induce Plaintiffs to act.

Pleading standards may be relaxed in circumstances where "factual information is peculiarily within the defendant's knowledge or control," but plaintiffs must "allege that the necessary information lies within the defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based." *Craftmatic*, 890 F.2d at 645. Here, Plaintiffs make no such claims. As such, the Court finds that Plaintiffs fail to adequately plead a claim for common law fraud and therefore Count II against Netco is dismissed.

### 2. Count II Against Option One

Plaintiffs allege that "[t]he misrepresentations made by the [D]efendants caused [P]laintiffs to enter into mortgage transactions," that "[they] relied on [these] misrepresentations," and that "[they] suffered damages as a result of the fraud." (Compl. ¶¶ 127-

129).  In opposition, in its motion to dismiss, Option One contends that "[d]espite being provided the opportunity to do so, Plaintiffs do not inject . . . specificity into the allegations" as required by Rule 9(b).  (OMTD at 17).

The Court finds that Count II of the Amended Complaint against Option One fails because it does not plead with particularity, as required by Rule 9(b).  Plaintiffs claim "defendants" made misrepresentations but fail to allege who said what, a requirement of any fraud claim.  Plaintiffs also fail to assert that specific claims made by Option One were made with the intention that the Plaintiffs would rely on them, another required element of any fraud claim.  All the Plaintiffs have done in this instance is recite the requisite elements of fraud without pointing to specific factual evidence to support their claims.  Accordingly, Count II of the Amended Complaint against Option One is dismissed pursuant to Rule 9(b).

### C.      Count III: Unconscionability

[C]ourts may refuse to enforce contracts that are unconscionable . . . ."  *Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc.*, 641 A.2d 1056, 1058 (N.J. Super. Ct. App. Div. 1994).  A claim for unconscionability requires two elements: "(1) unfairness in the formation of the contract, and (2) excessively disproportionate terms."  *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 920 (N.J. Super Ct. Ch. Div. 2002).  To survive a 12(b)(6) motion, a plaintiff must plausibly demonstrate "some overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms."  *Howard v. Diolosa*, 574 A.2d 995, 999-1000 (N.J. Super. Ct. App. Div. 1990).  In New Jersey, unconscionability exists only as a "shield against enforcement of an unreasonable contract and not as a sword on a claim for affirmative

15

relief." *Lind v. New Hope Prop., LLC*, No. 09-3757, 2010 WL 1493003, at *7 (D.N.J. Apr. 13, 2010).

### 1.    Count III Against Netco

Plaintiffs argue that Netco "imposed excessive fees and costs and overly onerous loan terms" and that such terms "constitue[d] common law unconscionability." (Compl. ¶ 131). In opposition, in its motion to dismiss, Netco contends that "Plaintiffs' claim for unconscionability . . . fails as a matter of law as [it] is not a recognized cause of action under New Jersey law" and "even if Plaintiffs raised the unconscionability claim for the purposes of requesting rescission of an unreasonable contract, such a claim is not applicable to Netco as Plaintiffs fail to allege that they entered into any kind of contractual agreement with Netco." (NTMD at 8-9).

The Court finds that Count III of the Amended Complaint against Netco fails on two grounds: 1) Plaintiffs assert unconscionability offensively when it is intended only to act as a "shield against enforcement of an unreasonable contract"; and 2) Plaintiffs fail to plead adequate factual allegations to "raise a right to relief above [a] speculative level." *Twombly*, 550 U.S. at 555; *Lind*, 2010 WL 1493003, at *7.

Here, Plaintiffs assert unconscionability as an affirmative claim for relief by requesting money damages *in addition to* rescission of the mortgage loan. (Compl. at 17). Because Plaintiffs assert unconscionability as a claim for damages and not just as a defense against the enforcement of a contract, Count III fails as a matter of law.

Even if Plaintiffs only intended to utilize unconscionability as a shield, Count III still does not provide adequate factual support to "raise a right to relief above [a] speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs only claim that Netco, in conjunction with other Defendants, "imposed excessive fees and costs and overly onerous loan terms." (*Id.* ¶ 131).

Such a claim does not plausibly allege either unfairness in the formation of a contract[7] or excessively disproportionate terms in a contract, elements required in any claim for unconscionability. Plaintiffs also fail to adequately plead that they were in a contractual relationship with Netco. Therefore, Count III of the Amended Complaint against Netco is dismissed.

### 2. Count III Against Option One

Plaintiffs argue that Option One, "imposed excessive fees and costs and overly onerous loan terms" and that such terms "constitue[d] common law unconscionability." (Compl. ¶ 131). In opposition, in its motion to dismiss, Option One contends that "a claim for unconscionability seeking monetary damages fails as a matter of law" and that "[i]nsofar that Plaintiffs seek recission, Plaintiffs'[s] Amended Complaint" fails to adequately state a claim pursuant to Rule 12(b)(6). (OTMD at 18) (internal quotations omitted).

Here, Plaintiffs assert unconscionability as an affirmative claim for relief by requesting money damages *in addition to* rescission of the mortgage loan. (Compl. at 17). Because Plaintiffs assert unconscionability as a claim for damages and not just as a defense against the enforcement of a contract, Count III fails as a matter of law.

Even if Plaintiffs only intended to utilize unconscionability as a shield, Count III still does not provide adequate factual support to "raise a right to relief above [a] speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs do have a contractual relationship with Option One, but fail to assert which contracts should be rescinded due to unconscionability or the bargaining disparity that existed between Plaintiffs and Option One which would have made the contract or contracts

---

[7] Plaintiffs also fail to allege which contract or contracts were unconscionable. Two possible contracts exist in the Amended Complaint: the original mortgage loan and the forbearance agreement. Plaintiffs totally fail to assert which of those contracts are unconscionable and thus require rescission.

unconscionable.  Accordingly, Count III of the Amended Complaint against Option One fails even if the Plaintiffs had not requested damages, as it fails to plausibly state a claim for relief pursuant to Rule 12(b)(6).

### D.      Count IV: Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show that 1) at plaintiff's expense; 2) defendant received a benefit; and 3) such benefit was received under circumstances that would make it unjust for defendant to retain benefit without paying.  *See Torres-Hernandez v. CTV Prepaid Solutions, Inc.*, No. 3:08-cv-1057-FLW, 2008 WL 5381227, at *8 (D.N.J. Dec. 17, 2008); *see also VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). A plaintiff must also show that they "expected remuneration from the defendant at the time [Plaintiffs] performed or conferred a benefit on [the] defendant and that the failure of remuneration enriched [the] defendant beyond its contractual right."  *VRG Corp*, 641 A.2d at 526.

#### 1.      Count IV Against Netco

Plaintiffs contend that Netco, "[a]s a consequence of [its] conduct . . . [has] been unjustly enriched."   (Compl. ¶ 136).   In opposition, in its motion to dismiss, Netco contends that "Plaintiffs' unjust enrichment claim fails to sufficiently state a claim for relief."  (NTMD at 9).[8]

The Court finds that Plaintiffs have failed to plead factual allegations which plausibly state a claim for relief, as Plaintiffs insufficiently assert their contractual relationship with Netco or how Netco was enriched by such a relationship.  Here, Plaintiffs make *no* allegation that they entered into a contractual relationship with Netco.  Assuming Plaintiffs intended to allege such a relationship existed, the Amended Complaint makes no mention of how Netco was enriched by

---

[8] Defendant also claims that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action" and cites to *Torres-Hernandez*.  (NMTD at 9). However, the court in *Torres-Hernandez* stated "[a]n unjust enrichment claim may be sustained independently as an alternative theory of recovery."  2008 WL 5381227, at *8.

Plaintiffs or how allowing the retention of such enrichment would be unjust. Accordingly, the Court dismisses Count III of the Amended Complaint against Netco under Rule 12(b)(6) for failure to properly state a claim.

### 2. Count IV Against Option One

Plaintiffs contend that Option One, "[a]s a consequence of [its] conduct . . . [has] been unjustly enriched." (Compl. ¶ 136). In opposition, in its motion to dismiss, Option One contends that Plaintiffs have not pleaded that "[Option One] was enriched in a manner not governed by any enforceable contract." (OTMD at 19)

In support of their unjust enrichment claim, Plaintiffs assert that Option One "failed to properly credit the payments" of Plaintiffs' timely mortgage payments and that "[p]ursuant to the [f]orbearance [a]greement [they] paid . . . Option One and GRP $54,000." (Compl. ¶¶ 35, 97). The Court, however, cannot determine how Option One was unjustly enriched based on Plaintiffs' Amended Complaint. Plaintiffs do not indicate if the Option One ever credited the mortgage payments or how those payments unjustly enriched Option One outside the scope of Plaintiffs' contractual obligation to pay the mortgage loan. Plaintiffs also lump together Option One and GRP when discussing the alleged overpayment of the mortgage loan and do not specify how Option One specifically was unjustly enriched by the alleged overpayments. Furthermore, Plaintiffs claim they paid different parties different amounts in accordance with various loan documents, and the Court cannot determine who was unjustly enriched in what way. Accordingly, Count IV of the Amended Complaint against Option One fails to plausibly assert a claim for relief and is dismissed.

**E.** **Count V: Breach of Fiduciary Duty**

A fiduciary duty arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. *F.G. v. MacDonell*, 696 A.2d 697, 703-04 (N.J. 1997) (stating "[t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position."). "The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care [,] [and] [,] [a]ccordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship." *Id.* (citing RESTATEMENT (Second) OF TRUSTS §§ 170, 174 (1959); RESTATEMENT (Second) OF TORTS § 874 (1979)).

A party cannot generally "state a claim for breach of fiduciary duty based solely on . . . allegations . . . which reflect nothing more than a debtor-creditor relationship . . . ." *Abulkhair v. Citibank & Assocs.*, 434 F. App'x 58, 63 (3d Cir. 2011). Generally, a fiduciary duty is presumed not to exist in a debtor-creditor relationship. *See Paradise Hotel Corp. v. Bank of N.S.*, 842 F.2d 47, 53 (3d Cir. 1988) ("It ordinarily would be anomalous to require a lender to act as a fiduciary for interest on the opposite side of the negotiating table.") (internal quotations omitted). However, certain "special circumstances" where the creditor "knows or has reason to know that the customer is placing his trust and confidence in the [creditor] and relying on the [creditor] so to counsel and inform him" may give rise to a fiduciary duty. *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

Such a circumstance may arise when "the lender encourage[s] [a] borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance' while "conceal[ing] its self-interest in promoting the transaction involved." *Id.* at 45-46. A "special

relationship" is not implied in "less egregious circumstances" and there is no duty by creditors to "disclose information [creditors] may have concerning the financial viability of the transactions the borrowers were about to enter." *Id*. at 46. For purposes of assigning a fiduciary duty, a mortgage lender is rated the same as any bank creditor. *See, e.g.*, *Margulies v. Chase Manhattan Mortg. Corp.*, 2005 WL 2923580, at *2 (N.J. Super. Ct. App. Div. Nov. 7, 2005) ("[A]s a general rule there is no fiduciary relationship between a debtor and a creditor, i.e., also a mortgagee and a mortgagor and, therefore, there can be no breach of fiduciary duty claim.").

### 1. Count V Against Netco

Plaintiffs allege that "[D]efendants Option One, MTLC, GRP, John Does and ABC Corporations owed a fiduciary duty to the [P]laintiffs" and Defendants breached that duty. (Compl. ¶¶ 139-140). In opposition, in its motion to dismiss, Netco argues that "Plaintiffs cannot succeed on their breach of fiduciary duty claim as they do not sufficiently allege that Netco owed a fiduciary duty to Plaintiffs." (NTMD at 11).

The Court finds that Plaintiffs have insufficiently pleaded that Netco owed Plaintiffs a fiduciary duty. Here, Plaintiffs make *no allegations whatsoever* that they had any relationship with Netco which would give rise to a fiduciary duty. The Amended Complaint alleged only that Necto was a settlement agent for the mortgage loan. (Compl. ¶ 28). Such an allegation, absent other factual assertions, does not plausibly suggest that Netco was in such a dominant or superior position to Plaintiffs as to create a fiduciary duty. Accordingly, Count V of the Amended Complaint against Netco fails to adequately plead a claim for relief under Rule 12(b)(6) and is dismissed.

## 2. Count V Against Option One

Plaintiffs allege that "[D]efendants Option One, MTLC, GRP, John Does and ABC Corporations owed a fiduciary duty to the [P]laintiffs" and Defendants breached that duty. (Compl. ¶¶ 139-140). In opposition, in its motion to dismiss, Option One argues that "a lender does not owe a fiduciary duty to a borrower, absent limited circumstances that are not present here." (OMTD at 20).

The Court agrees with Option One and finds that Count V of the Amended Complaint against Option One fails to plausibly argue that Option One had a fiduciary duty to Plaintiffs. The law is clear: creditors generally do not have a fiduciary duty to their debtors outside of special circumstances. Plaintiffs and Option One have a creditor-debtor relationship and Plaintiffs do not make any factual allegations suggesting that the instant relationship is some special circumstance in which a fiduciary duty would arise for Option One. Accordingly, Count V of the Amended Complaint against Option One is dismissed for failure to state a claim pursuant to Rule 12(b)(6).

## F. Count VI: Breach of Implied Duty of Good Faith and Fair Dealing

Every contract entered into under the laws of New Jersey contains an implied covenant of good faith and fair dealing. *Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010). "The party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (internal quotations omitted). A plaintiff may be entitled to relief for violation of this covenant if the defendant acts with ill motives to destroy the plaintiff's reasonable

expectations. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). "Bad motive" by the defendant is essential, and "an allegation of bad faith or unfair dealings should not be permitted to be advanced in the abstract and absent improper motive." *Id.* However, "the doctrine of good faith and fair dealing cannot . . . create rights or obligations in the absence of a valid contract." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 390 (D.N.J. 1999).

### 1. Count VI Against Netco

Plaintiffs allege that Netco "owed a duty to [P]laintiffs to act in good faith and to deal fairly" and that "[t]he acts of [Netco] violated said duties." (Compl. ¶¶ 143-144). In opposition, in its motion to dismiss, Netco argues that "Plaintiffs did not have a contract with Netco and did not allege any contractual relationship with Netco." (NTMD at 13).

The Court finds that Count VI of the Amended Complaint against Netco fails because Plaintiffs failed to plausibly plead that they had a contractual relationship with Netco that would give rise to a claim for breach of implied duty of good faith and fair dealing. As with Count V of the Amended Complaint, Plaintiffs here make *no allegations whatsoever* that they had a contractual relationship with Netco which would give rise to a claim for a breach of the implied duty of good faith and fair dealing. The Amended Complaint alleges only that Necto was a settlement agent for the mortgage loan. (Compl. ¶ 28). Such allegations, without more, cannot plausibly suggest that Plaintiffs had a contractual relationship with Netco, and such a relationship is necessary to sustain a claim for breach of implied duty of good faith and fair dealing.

Even if the Court inferred that such a contractual relationship existed between the Plaintiffs and Netco, Count VI still fails to plausibly allege that Netco acted with bad faith. The essential element of a claim for a breach of duty of good faith and fair dealing is that the defendant acted with bad faith to destroy plaintiffs' expectations of the contract. Here, Plaintiffs

do not allege that Netco acted in bad faith or that any actions taken by Netco were done with the intent to undermine Plaintiffs' expectations in the mortgage loan. Accordingly, Count VI of the Amended Complaint against Netco fails to plausibly state a claim for relief pursuant to Rule 12(b)(6) and is thus dismissed.

### 2. Count VI Against Option One

Plaintiffs allege that Option One "owed a duty to [P]laintiffs to act in good faith and to deal fairly" and that "[t]he acts of [Option One] violated said duties." (Compl. ¶¶ 143-144). In opposition, in its motion to dismiss, Option One argues that "Plaintiffs . . . do not make any factual allegations to support their claim that Option One acted . . . in bad faith . . . ." (OMTD at 22).

The Court finds that Count VI of the Amended Complaint against Option One plausibly alleges that Option One acted in bad faith with regards to the forbearance agreement. Plaintiffs assert that "Option One . . . told the [P]laintiffs that they would not have to defend the foreclosure action as long as they abided by the terms of the [f]orbearance [a]greement" and that "during the pendency of the [f]orbearance [a]greement . . . Option One continued the foreclosure action against [P]laintiffs." (Compl. ¶¶ 74, 85). Plaintiffs claim that these "misrepresentations were made to induce [them] to overpay on their mortgage note." (Compl. ¶ 77). According to Plaintiffs, Option One entered into a contract with them that it had no intent of abiding by.[9] Such allegations plausibly support an argument that Option One breached its duty of good faith

---

[9] The Court also notes that these claims remedy the factual deficiencies of the Plaintiffs' first Complaint. Plaintiffs' first complaint was dismissed for making conclusory allegations that Option One "[s]urreptitiously, and in breach of the Forbearance Agreement . . . entered Final Judgment against the [P]laintiffs in the foreclosure action . . . ." (D.E. No. 41, Complaint Against all Defendants ¶ 47). Here, the Plaintiffs' Amended Complaint provides more factual allegations such as that Option One *told* them it would not continue with the foreclosure action and that Option One *induced* them into making the forbearance agreement with false promises.

and fair dealing. Accordingly, Count VI of the Amended Complaint against Option One is not dismissed.

### G. Count VII: Violations of the New Jersey Home Ownership Security Act

The intent of the New Jersey Home Ownership Security Act ("NJHOSA") is to "prohibit[] practices in the making of home mortgage loans." *DaSilva v. Aries Fin., LLC*, No. 08-19547, 2011 WL 235 8513, at *4 (Bankr. D.N.J. June 9, 2011). The act designates three types of loans - home loans, covered home loans, and high cost home loans – and "subjects creditors who issue them . . . to increasing levels of regulation." *Id.* (citing Baher Azmy & David Reiss, *Modeling a Response to Predatory Lending: The New Jersey Home Ownership Security Act of 2002*, 35 RUTGERS L.J. 645, 671 (2004)). According to the NJHOSA:

> "[c]reditor" means a person who extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments, and to whom the obligation is payable at any time. Creditor shall also mean any person brokering a home loan, which shall include any person who directly or indirectly solicits, processes, places, or negotiates home loans for others or who closes home loans which may be in the person's own name with funds provided by others and which loans are thereafter assigned to the person providing the funding of such loans, provided that creditor shall not include a person who is an attorney providing legal services to the borrower or a person or entity holding an individual or organization insurance producer license in the line of title insurance or a title insurance company, as defined by subsection c. of section 1 of P.L.1975, c.106 (C.17:46B-1), or any officer, director or employee thereof, providing services in the closing of a home loan who is not also funding the home loan and is not an affiliate of the creditor or an assignee that is subject to the provisions of section 6 of this act.

N.J. STAT. ANN. § 46:10B-24 (West 2013).

#### 1. Count VII Against Netco

Here, Plaintiffs argue that Netco, "through [its] acts and omissions, violated the NJHOSA" and that "[a]t all times . . . [Netco] [was] [a] creditor within the meaning of the NJHOSA." (Compl. ¶¶ 147-148). The Plaintiffs further allege that Netco violated the NJHOSA

by "regularly participating in abusing predatory lending practices, such as the making of loans that are equity-based rather than income-based, and the financing of high points and fees that cause[d] the loss of equity with each refinancing." (*Id*. ¶ 149). Expanding on said claim, Plaintiffs argue that Netco "financed, directly or indirectly . . . credit," "charged a late payment fee in relation to the home loan," and "charge[d] a fee for informing or transmitting . . . the balance due to pay off a home loan or to provide a release upon prepayment." (*Id*. ¶ 151(a), (c), (e)). In opposition, in its motion to dismiss, Netco argues that it is not a "creditor" as defined by the NJHOSA and that, furthermore, "Plaintiffs' [NJ]HOSA claim against [it] fails to meet the requirements of Fed. R. Civ. P. 8(a)." (NTMD at 14). In rebuttal, in their opposition brief, Plaintiffs merely argue that "the [D]efendant mortgage note violates the NJHOSA" but do not identify which Defendants they refer to or address Netco's motion to dismiss arguments in any way. (Opp. at 24-25).

The Court finds that Plaintiffs have not plausibly established that Netco is a "creditor" as defined by the NJHOSA. The NJHOSA applies to "a person who extends consumer credit" or "any person brokering a home loan, which shall include any person who directly or indirectly solicits, processes, places, or negotiates home loans." N.J. STAT. ANN. § 46:10B-24 (West 2013). Plaintiffs allege that Netco "[is] [a] creditor within the meaning of the [NJHOSA]," but fail to demonstrate that Netco extended credit or brokered the instant mortgage loan in any way, as required by the statute. (Compl. ¶¶ 4, 28). As such, Plaintiffs' claim is insufficient and merely conclusory. Thus, Count VII of the Amended Complaint against Netco fails to plausibly establish that Netco is covered by the NJHOSA and is dismissed.[10]

---

[10] The Court acknowledges that Netco also moves to dismiss Count VII of the Amended Complaint for failure to state a claim pursuant to rule 12(b)(6), but because the Court finds that Plaintiffs have failed to satisfy the threshold requirement that Netco be covered under the NJHOSA, the Court need not address this issue.

### 2. Count VII Against Option One

Plaintiffs argue that Option One, "through [its] acts and omissions, violated the NJHOSA" and that "[a]t all times . . . [Option One] [was] [a] creditor within the meaning of the NJHOSA." (Compl. ¶¶ 147-148). Plaintiffs further allege that Option One violated the NJHOSA by "regularly participating in abusing predatory lending practices, such as the making of loans that equity-based rather than income-based, and the financing of high points and fees that cause[d] the loss of equity with each refinancing." (*Id.* ¶ 149). Expanding on this claim, Plaintiffs argue that Option One "financed, directly or indirectly . . . credit life," "charged a late payment fee in relation to the home loan," and "charge[d] a fee for informing or transmitting . . . the balance due to pay off a home loan or to provide a release upon prepayment." (*Id.* ¶ 151(a), (c), (e)). In opposition, in its motion to dismiss, Option One argues that "Plaintiffs in the Amended Complaint merely regurgitate verbatim the very same cause of action this Court dismissed." (OMTD at 23).

The Court agrees with Defendants and finds that Plaintiffs have failed to remedy the flaws identified in their original complaint and restate, verbatim, the NJHOSA claim that this Court previously dismissed. Accordingly, Count VII of the Amended Complaint against Option One is dismissed.

### H. Count VIII: Predatory Lending

In New Jersey, claims for "predatory lending" are tied to some underlying statute or provision that reflects the conduct of the "predatory lending" charged. *See, e.g.*, N.J. ADMIN. CODE § 3:30-1.1 (2012) ("The purpose of [the "Predatory Lending"] chapter is to implement the NJHOSA of 2002"); *Gutierrez v. TD Bank*, No. 11-5533, 2012 WL 272807, at *11-12 (D.N.J. Jan. 27, 2012) (construing a claim for predatory lending as interchangeable with claims under the

Truth in Lending Act and the NJCFA); *Lawrence v. Emigrant Mortg. Co.*, No. 11-3569, 2012 WL 1108532, at *7 (D.N.J. Mar. 30, 2012) (dismissing a claim for predatory lending because the claim was equivalent to an allegation of common law fraud); *Cleveland v. O'Brien*, No. 10-3169, 2010 WL 4703781, at *12-13 (D.N.J. Nov. 12, 2010) (finding that a claim for predatory lending is actually a claim brought under the NJHOSA. In New Jersey, a claim for predatory lending can also be construed as a violation of the NJCFA, the Law Against Discrimination, the Fair Housing Act, or the Civil Rights Act. *See Assocs. Home Equity Servs., Inc. v. Troup*, 778 A.2d 529, 537-38 (N.J. Super. Ct. App. Div. 2001).

Plaintiffs allege that MTLC and Option One did not meet their underlying need for a mortgage loan, that "defendants[11] targeted the [P]laintiffs because of the population in which they reside," and that "defendants sought to take advantage of the plaintiffs due to their lack of sophistication in the lending market, their lack of perceived options for the loan based on discrimination . . . ." (Compl. ¶¶ 156, 159). In opposition, in their motions to dismiss, Netco and Option One claim "Plaintiffs' claim of predatory lending should be dismissed as it is not recognized as an independent cause of action under the law." (NTMD at 15; OMTD at 25). The Court finds that although a claim for predatory ending can be construed as the functional equivalent of a different, independent cause of action, Plaintiffs have not plausibly alleged facts sufficient to allow this court ot make such an inference for the Plaintiffs.

---

[11] Plaintiffs' use of the term "defendants" is unclear. In the Amended Complaint, Plaintiffs first refer to "defendants MTLC and Option One," (Compl. ¶ 154), and then later refer to "defendants." (*See, e.g.*, Compl. ¶¶ 156-159). Here, the Court construes "defendants" to include Netco, as Netco does not object that Plaintiffs failed to specifically include them in the Count as they do in other Counts. *Compare* NMTD at 15 (arguing predatory lending claim should be dismissed because it is not an independent cause of action) *with* NTMD at 16 ("Plaintiffs do not appear to bring a breach of contract claim against Netco as they identify specific defendants but omit Netco.").

New Jersey courts have construed predatory lending claims to be the functional equivalent of claims brought under the Truth in Lending Act, the NJCFA, the NJHOSA, common law fraud, the Civil Rights Act, the Fair Housing Act, and the Law Against Discrimination. *See, e.g.*, *Troup*, 778 A.2d at 537-38. Plaintiffs have already pleaded claims under the NJCFA, the NJHOSA, and common law fraud.[12] The Amended Complaint does not provide adequate factual support to sustain a claim under any of the other causes of action that courts have read into a charge of predatory lending. *Id.*

Plaintiffs allege they were targeted "because of the population in which they reside" and because of discrimination, but fail to assert which protected group or groups they belong to which could sustain a claim under other state or federal statutes. (Compl. ¶¶ 156, 159; *see also, e.g.*, Fair Housing Act, 42 U.S.C. § 3604(b) (2012) (making it illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, *because of race, color, religion, sex, familial status, or national origin*.") (emphasis added). Because predatory lending is not an independent claim and the Amended Complaint does not contain adequate factual support to infer any other new claim on behalf of the Plaintiffs, Count VIII of the Amended Complaint against Netco and Option One is dismissed.

---

[12] *See supra* Parts III A, B, G.

## I.    Count IX: Breach of Contract[13]

A party alleging a breach of contract must establish the presence of: "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F.Supp. 2d 552, 561 (D.N.J. 2002). Generally, liability for a breach of contract must flow from the contracting parties. *Wilzig v. Sissleman*, 506 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1986). To bring a breach of contract claim, the party against which the claim is brought must be a party to the contract in question. *See*, *e.g.*, *Watiti v. Walden Univ.*, No. 07-4782, 2008 WL 2280932, at *11 n. 7 (D.N.J. May 30, 2008).

However, liability for a breach of contract can also flow from an agent who acts "within the apparent authority which [the principal] knowingly permits the agent to assume or which he holds the agent out to the public as possessing." *Id*. This authority allowing an agent to contract on behalf of another party can be "implied or apparent [and] can neither be qualified by the secret instructions of the principal nor enlarged by the unauthorized misrepresentations of the agent." *Id*. at 1244. "Apparent authority imposes liability, not as a result of an actual contractual relationship, but because of actions by a principal which have misled a third party into believing that a relationship of authority does, in fact, exist." *Id.*

### 1.    Count IX Against Netco

Plaintiffs allege that "[D]efendants GRP and Option One entered into a written mortgage forbearance agreement with the [P]laintiffs on April 4, 2008," that "the terms of the contract

---

[13] The Court notes that the paragraph enumeration for Count IX of the Amended Complaint is incorrect. Count IX should start at paragraph 161 and end at paragraph 166. When citing to Count IX of the Amended Complaint, the Court will include a [sic ¶ x] which references the paragraph as it is enumerated in the uncorrected Amended Complaint so parties may reference accordingly. The Court also notes that this is the first time it has addressed the breach of contract claim and thus the Court reviews it more thoroughly.

prohibited the [D]efendants[14] from prosecuting [D]efendant Option One's foreclosure action against the [P]laintiffs during the pendency of the agreement." (Compl. ¶¶ 162-163 [sic ¶¶ 151-152]). In opposition, in its motion to dismiss, Netco argues that "[P]laintiffs do not appear to bring a breach of contract claim against Netco as they identify specific defendants but omit Netco." (NMTD at 16).

The Court agrees with Netco. Plaintiffs specifically identify defendants GRP and Option One but fail to allege Netco was involved with the breach of contract. Accordingly, Count IX of the Amended Complaint against Netco fails to plausibly state a claim against Netco and is thus dismissed.

### 2. Count IX against Option One[15]

Plaintiffs allege that "[D]efendants GRP and Option One entered into a written mortgage forbearance agreement with the [P]laintiffs on April 4, 2008," and that "the terms of the contract prohibited the [D]efendants from prosecuting [D]efendant Option One's foreclosure action against the [P]laintiffs during the pendency of the agreement." (Compl. ¶¶ 162-163 [sic ¶¶ 151-152]). In opposition, in its motion to dismiss, Option One argues that "Plaintiffs fail to allege that Option One was a party to the [f]orbearance [a]greeent." (OMTD at 27).

The Court finds that Count IX of the Amended Complaint plausibly states a claim for relief. Because there is strong debate over the parties involved in the forbearance agreement, the Court's discussion proceeds as follows: i) the Court will determine if Option One is a party to the forbearance agreement; ii) the Court will determine if Plaintiffs properly pleaded that Option

---

[14] Plaintiffs' use of the term "defendants" is unclear. In the Amended Complaint, Plaintiffs first refer to "[d]efendants GRP and Option One," (Compl. ¶ 162 [sic ¶ 151]), and then later to refer to "defendants." (*See, e.g.*, Compl. ¶¶ 163, 165 [sic ¶¶ 152, 154]). The Court construes this use of "defendants" in this case to not include Netco. *See supra* note 7 and accompanying text.

[15] The Court acknowledges that there are two possible contracts in this case: the original mortgage loan and the forbearance agreement. Because the parties only debate the forbearance agreement as it relates to breach of contract, the Court only discuses that alleged contract breach.

One breached the forbearance agreement; iii) the Court will determine if the breach of contract claim was otherwise properly pleaded.

### i. Option One is a Party to the Forbearance Agreement

Plaintiffs and GRP are the parties named in the forbearance agreement. (D.E. No. 51-3, Cert. of Anthony Laura, Ex. B ("Forbearance Agreement") at 1).[16] However, the forbearance agreement also mentions a "Lender" and identifies the Lender as "the owner and holder of the [mortgage loan] dated October 25, 2006." (*Id.*). Plaintiffs allege that MTLC was the original owner of the mortgage loan dated October 25, 2006. (Compl. ¶¶ 25, 27). Plaintiffs also allege that MTLC assigned the mortgage loan to Option One in November 2006. (*Id.* ¶ 58). Thus, Option One, according to Plaintiffs' Amended Complaint, is the Lender as described by the forbearance agreement because the forbearance agreement.

The forbearance agreement contractually limits Lender's rights. According to the forbearance agreement entered into by GRP, Lender could not proceed with foreclosure proceedings unless an Event of Default occurred, and payments to Lender had to go through GRP. (Forbearance Agreement at 2). Although there are no allegations in the Amended Complaint that GRP had actual or implied authority to act as Option One's agent, the Court notes that in reading the agreement as a whole, it is clear that Option One is a party to the forbearance agreement. The forbearance agreement makes it clear that GRP had at least the implicit authority to act as Option One's agent because GRP made contractual obligations on behalf of Option One and Option One never objected to these obligations created by GRP.

---

[16] The Court notes that although Plaintiffs failed to attach the forbearance agreement to their Amended Complaint, the Court may base its analysis on both the "facts alleged in the [Amended] Complaint and the documents on which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

### ii. Plaintiffs Plausibly Argue that Option One Breached the Forbearance Agreement

The forbearance agreement required Lender, Option One, to "forbear in scheduling the foreclosure sale as long as an Event of Default [did] not exist." (Foreclosure Agreement at 2). An Event of Default occurred if "[Plaintiffs] fail[ed] to make any payment specified herein on the due date." (*Id*.). Plaintiffs allege that "[d]uring the pendency of the [f]orbearance [a]greement . . . Option One continued the foreclosure action against [them]." (Compl. ¶ 85). Because Option One was obligated, through its agent GRP, to forbear the foreclosure agreement pending an Event of Default, and because Plaintiffs argue that Option One continued its foreclosure action even though there was no Event of Default, Plaintiffs have plausibly argued that Option One breached the forbearance agreement.

### iii. Plaintiffs Plausibly Plead All Elements of a Breach of Contract Claim

Plaintiffs must also properly plead damages as "[d]amage is an element of the claim which Plaintiff must allege to survive Defendant's motion to dismiss." *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1048 (D.N.J. 2011) (internal citations omitted). Here, Plaintiffs allege that "[p]ursuant to the [f]orbearance [a]greement, [they] paid . . . Option One . . . $54,000" and that because of the forbearance agreement "[P]laintiffs overpay[ed] the amount they owed on their mortgage note." (Compl. ¶¶ 68, 97). Such an overpayment, as well as having to defend the foreclosure action, is indicative of "sustained damages." (*Id*. ¶ 155). Accordingly, the Court finds that because Option One was a party to the forbearance agreement and Plaintiffs properly pleaded all required elements of a claim for breach of contract against Option One, Count IX of the Amended Complaint against Option One is not dismissed.

## IV.    Conclusion

Based on the above, the Court GRANTS Defendant Netco's motion to dismiss in its entirety.  As to Option One, the Court GRANTS Defendant's motion to dismiss Counts One through Five, Count Seven, and Count Eight of Plaintiffs' Amended Complaint and DENIES Defendant's motion as to Count Six and Count Nine.  The Court also grants Plaintiffs leave to amend the Complaint—consistent with this Opinion—within thirty days.

s/*Esther Salas*

**Esther Salas, U.S.D.J.**
