NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **CHRISTINE DONNELLY AND KEVIN J. DONNELLY,** | : : : | |
| **Plaintiffs,** | : : : | **Civil Action No.: 11-7019 (ES)** |
| v. | : : | **OPINION** |
| **OPTION ONE MORTGAGE CORPORATION, et al.** | : : : | |
| **Defendants.** | : : : | |

**SALAS, DISTRICT JUDGE**

## I.     Introduction

Pending before this Court are the following two motions to dismiss Plaintiffs Christine and Kevin J. Donnelly's (hereinafter "Plaintiffs") Second Amended Complaint, (D.E. No. 60): Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), Defendant Option One Mortgage Corporation, n/k/a Sand Canyon Corporation, ("Option One"), moves for dismissal of Counts I – V and Counts VII and VIII of Plaintiffs' Second Amended Complaint,[1] (D.E. No. 65); and Defendant Netco, Inc. ("Netco") moves for dismissal of Counts I-IX, (D.E. No. 64).  The Court has jurisdiction under 28 U.S.C. § 1332(a).  Having considered the parties' submissions in support of and in opposition to the instant motions, the Court decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendants'

---

[1] Option One has not moved to dismiss Count VI (breach of covenant of good faith and fair dealing) or Count IX (breach of contract) of Plaintiffs' Second Amended Complaint.  (*See* D.E. No. 65-1, Option One's Moving Brief, at p. 2 n. 4; D.E. No. 70, Option One's Reply Brief, at 2 n. 2).

motions are granted and Plaintiffs' Second Amended Complaint is hereby dismissed, *with prejudice*.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND[2]

Plaintiffs allege that Mortgage Tree Lending Corporation ("MTLC"), an agent for Defendant Option One, approached them to refinance the mortgage on a residential property located at 690 Devon Street, Kearny, New Jersey.  (D.E. No. 60, Second Amended Complaint ("Sec. Am. Compl.") ¶¶ 12, 17).  Despite being up-to-date on their mortgage payments, Plaintiffs entered into negotiations with MTLC.  (*Id.* ¶¶ 19-20).  Plaintiffs requested a loan in the amount of $320,000 with a fixed interest rate of 7.5% and monthly payments not to exceed $2,300. (*Id.* ¶ 20).  According to Plaintiffs, although MTLC knew that neither it nor Option One could provide a mortgage consistent with Plaintiffs' request, MTLC promised to do so anyway. (*Id.* ¶ 21).  Plaintiffs allege that MTLC's misrepresentations were made "in compliance with [D]efendant Option One's instruction to reduce underwriting standards and increase the number of subprime mortgages the Defendant could securitize," (*id*. ¶ 24), and that Plaintiffs relied upon said misrepresentations in believing that MTLC would provide Plaintiffs with a fixed rate mortgage.  (*Id*. ¶ 25-26).

On October 25, 2006, Netco, who Plaintiffs allege was an agent for Option One, attended the closing for the refinanced mortgage with authority to act on Option One's behalf.  (*Id.* ¶¶ 27, 29-30).  Prior to the closing, MTLC advised Plaintiffs not to hire an attorney for the closing.  (*Id.* ¶ 28).   At the closing, Netco presented Plaintiffs with a $323,000 adjustable rate loan, made payable to MTLC with a starting interest rate of 9.7% and an initial monthly payment of $2,700.

---

[2] For the purpose of adjudicating motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept the factual allegations pled by Plaintiffs as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  Therefore, the relevant facts presented herein are those gleaned from Plaintiffs' Second Amended Complaint.

(*Id.* ¶ 31).   Netco did not explain why the terms of the loan presented at the closing were different from the terms of the loan that was promised.  (*Id.* ¶ 32).  Plaintiffs further allege that "Option One and MTLC, through Defendant Netco coerced the [P]laintiffs into signing the mortgage note stating that the refinance proceeds would be used in part to payoff their mortgage and if they did not sign they would be in default."  (*Id.* ¶ 33 ).

Option One acquired Plaintiffs' mortgage note from MTLC "immediately upon closing" and "was aware or should have been aware of MTLC's misrepresentation."  (*Id.* ¶ 39).  Plaintiffs also aver that two allonges to the note, both dated October 25, 2006 and signed by MTLC, state that "all mortgage payments be made to [D]efendant Option One" and that "the mortgage note is made without recourse."  (*Id.* ¶¶ 35-37 (internal quotation marks omitted)).  Plaintiffs further allege that Option One "knew or should have known…that [P]laintiffs were being misled about essential loan terms and were not getting what they promised." [sic]  (*Id.* ¶ 40).  Additionally, Plaintiffs allege that before it acquired their refinanced mortgage, Option One "should have discovered that fraud was occurring in loan flipping products."  (*Id.* ¶ 42).  Similarly, Plaintiffs also allege that Option One "was aware or should have been aware of the terms of the Donnellys' mortgage loan prior to closing" and that Option One "was aware or should have been aware that the [P]laintiffs were not qualified for the MTLC mortgage loan."  (*Id.* ¶¶ 47-48).

After the closing, Plaintiffs informed Option One that MTLC had promised them that they could refinance after six months and that Netco had failed to provide Plaintiffs with a copy of the executed loan documents.  (*Id.* ¶¶ 55-56).  Option One never supplied Plaintiffs with a complete copy of the executed loan documents, nor did it otherwise address Plaintiffs' concerns.  (*Id.* ¶¶ 57).  Thereafter, "[P]laintiffs made their first two mortgage payments to . . . Option One in accordance with the mortgage note."  (*Id.* ¶¶ 64).  Subsequently, Option One "intentionally

failed to properly credit the payments." (*Id.* ¶¶ 65). Despite being asked to review and correct Plaintiffs' payment history, Option One refused to do so and intimated that Plaintiffs were in default. Moreover, Option One intentionally failed to advise Plaintiffs, via written notice, of the purported default. (*Id.* ¶¶ 66-68). In April 2007, Option One initiated a foreclosure action against Plaintiffs in the Superior Court of New Jersey. (*Id.* ¶ 69).

In an effort to address the alleged mortgage default, Plaintiffs contacted Option One who directed Plaintiffs to contact its agent, Defendant GRP Loan, LLC/GRP Financial Services Corp. ("GRP"). (*Id.* ¶¶ 76-77). According to Plaintiffs, GRP, having authority to act on behalf of Option One and to bind Option One regarding loss mitigation efforts, negotiated with Plaintiffs regarding loss mitigation, including negotiations regarding a forbearance agreement, via instructions provided by Option One. (*Id.* ¶¶ 73, 81). GRP informed Plaintiffs that in order to become current they would have to make a lump sum payment of $8,000 and thereafter make monthly payments of $3,000, (*id.* ¶¶ 78-79), and that if they made said payments "the foreclosure action would be discontinued and dismissed." (*Id.* ¶ 82). Plaintiffs allege that Option One "knew or should have known that…GRP's statements assuring the [P]laintiffs that if they made forbearance payments the foreclosure action would be discontinued and dismissed were false." (*Id.* ¶ 84). In July 2007, Plaintiffs paid a lump sum of $8,000 to GRP for Option One, and thereafter, Plaintiffs paid GRP (for Option One) $3,000 per month. (*Id.* ¶ 86).

In April 2008, after GRP told Plaintiffs that they still were not current on their mortgage and that Option One required them to sign a forbearance agreement, Plaintiffs entered into a forbearance agreement with Option One and GRP. (*Id.* ¶ 87-88, 97). The forbearance agreement was to govern the parties' relationship until February 2009. (*Id.* ¶ 97). The agreement required an initial payment of $21,000 with monthly payments of $3,000. (*Id.*). The forbearance

agreement "specifically required that…Option One place the foreclosure action in abeyance and prohibited…Option One from prosecuting the complaint during the pendency of the agreement." (*Id.* ¶ 99).

Notwithstanding the terms of the forbearance agreement and their promise to refrain from prosecuting the foreclosure action, Option One continued to pursue the foreclosure action against the Plaintiffs.  (*Id.* ¶ 104).  On July 15, 2008, after Plaintiffs had paid Option One $30,000 under the forbearance agreement, Option One "intentionally entered [f]inal [j]udgment against the [P]laintiffs in its foreclosure action."  (*Id.* ¶ 106).  On July 15, 2008, Option One obtained a Writ of Execution against the Plaintiffs' property.  (*Id.* ¶ 108).  Option One failed to serve Plaintiffs with either the Writ of Execution or a copy of the final judgment.  (*Id.* ¶¶ 110-11).  Plaintiffs further aver that Option One "was aware or should have been aware that the [f]orbearance [a]greement prohibited it from prosecuting the foreclosure action" and that Option One "was aware or should have been aware that the [P]laintiffs made all required payments under the [f]orbearance [a]greement."  (*Id.* ¶¶ 112-13).  Plaintiffs further maintain that "[a]t the conclusion of the [f]orbearance [a]greement, the [P]laintiffs were prepared to resume making their regular monthly payments under the mortgage note," but "GRP misrepresented…that they were required to make a balloon payment of $20,000" before they could resume making the normal monthly payments; and that "[n]o such balloon payment is stated in the [f]orbearance [a]greement."[3]  (*Id.* ¶¶ 118-21).

On September 8, 2009, without noticing Plaintiffs, Option One and GRP commenced a sheriff's sale proceeding against Plaintiffs' property, (*id.* ¶ 130), and on September 24, 2009, the Hudson County Sheriff issued a sheriff's deed to GRP.  (*Id.* ¶ 131).  Thereafter, Plaintiffs

---

[3] The Court notes that "[by] March 2009, Plaintiffs had paid Option One approximately $70,000 towards the mortgage note."  (*Id.* ¶ 125).

retained counsel and defended the foreclosure action.  (*Id.* ¶ 132).  On October 3, 2011, the Hon. Thomas Olivieri, J.S.C. vacated the final judgment previously obtained by Option One, voided the sheriff's sale and dismissed the foreclosure action.  (*Id.* ¶ 133).

Based on the foregoing facts, Plaintiffs filed suit in New Jersey Superior Court on October 11, 2011 against Option One, MTLC, GRP, W.J. Bradley Mortgage Capital Corporation, NETCO, Inc., John Does No. 1-12, and ABC Corporations No. 1-10.   On December 1, 2011, the case was removed to this Court.  (D.E. No. 1).  On July 30, 2013, Plaintiffs filed their Second Amended Complaint, naming Option One, Netco, GRP[4] and John Does 1-12 and ABC Corporations 1-10 as Defendants.  (*See* D.E. No. 60).[5]  On August 8, 2013, Netco and Option One filed their respective motions to dismiss Plaintiffs' Second Amended Complaint.  (D.E. Nos. 64, 65).  Having been fully briefed, the instant motions are now ripe for adjudication.

## III.   LEGAL STANDARD

### 1)   Motion to Dismiss for Failure to Comply with Rule 9(b)

Option One and Netco seek dismissal of Counts I and II of Plaintiffs' Second Amended Complaint (Plaintiffs' fraud based claims) on the basis that these claims again fail to meet the

---

[4] GRP was not named as a Defendant in Plaintiffs' original Complaint (*see* D.E. No. 1-1) but was named in their First Amended Complaint (*see* D.E. No. 48) and the Second Amended Complaint (*see* D.E. No. 60).  GRP has not moved for dismissal or joined in Option One's and/or Netco's motion to dismiss.  To date, GRP has not answered or otherwise responded to Plaintiffs' First Amended Complaint or Second Amended Complaint.

[5] Plaintiffs' Second Amended Complaint and the pending motions to dismiss come after this Court granted Defendant Option One's motion to dismiss Plaintiffs' original Complaint. (*See* D.E. No. 47); and after this Court granted, in part, and denied, in part, Defendants Option One and Netco's motions to dismiss Plaintiffs' First Amended Complaint. (*See* D.E. No. 56).  Hence, Plaintiffs' Second Amended Complaint, which Defendants Option One and Netco have again moved to dismiss pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), represents a proverbial *third* bite at the apple, with respect to Plaintiffs' attempt to present legally sufficient allegations against Defendants Option One and Netco.

pleading requirement of Federal Rule of Civil Procedure 9(b).  Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud, including New Jersey Consumer Fraud Act ("NJCFA") claims, over and above the pleading requirements of Rule 8(a).  *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The intended purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.  "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *Wiatt v. Winston & Strawn, LLP*, No. 10-6608, 2011 WL 2559567, at *17 (D.N.J. June 27, 2011) ("Plaintiff must also allege who made the purported misrepresentation and what specific misrepresentations were made.").

### 2)  Motion to Dismiss for Failure to State a Claim: Rules 12(b)(6) & 8(a)

Option One seeks dismissal of Counts III, IV, V, VII and VIII of Plaintiffs' Second Amended Complaint on the basis that these claims fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Netco seeks to dismiss Counts III through IX pursuant to Rule 12(b)(6) (failure to state claim).  On a motion to dismiss pursuant to Rule 12(b)(6), "courts are

required to accept all well-pleaded allegations in the Complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In *Iqbal*, the Supreme Court established a two-step process for determining whether a Complaint raises a right to relief above the speculative level. *Id*. First, a court must identify any conclusory allegations, as they are "not entitled to the assumption of truth." *Id*. Second, the court must consider if the assumption of truth attributed to the non-conclusory factual allegations plausibly suggests an entitlement of relief. *Id*. Determining whether the allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Additionally, Fed. R. Civ. P. 8(a)(2) requires a Complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." While the pleading standard announced by Rule 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (internal citation omitted). Finally, a district court deciding a motion to dismiss generally does not consider materials beyond the pleadings. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997). "[When] deciding a Rule 12(b)(6) motion, a court must consider

only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2011).

## IV.   DISCUSSION

### A.  Plaintiffs' Fraud Based Claims (Counts I and II)

As an initial point, the Court notes that it previously dismissed, *without prejudice*, all counts of Plaintiffs' First Amended Complaint with respect to Netco.  (*See* D.E. No. 56).  This Court also dismissed, without prejudice, all counts, except Counts VI and IX, with respect to Option One.  (*Id.*).  Plaintiffs were given thirty days to amend their pleading, (*id.*), and as a result, Plaintiffs filed a Second Amended Complaint, which is the Complaint at issue here.

In previously dismissing Plaintiffs' NJCFA and common law fraud claims (Counts I and II of Plaintiffs' First Amended Complaint) against Option One and Netco, this Court concluded that those claims failed to satisfy the heightened pleading standard applicable to such claims under Federal Rule of Civil Procedure 9(b).  (*See* D.E. No. 57 at 10-15).  It is against this backdrop that the Court now examines Plaintiffs' Second Amended Complaint to determine whether Plaintiffs have satisfied the pleading standard of Rule 9(b).

### 1)      Count I—Violation of the New Jersey Consumer Fraud Act

To establish a claim under the NJCFA, Plaintiffs must plead "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the loss." *Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 165 (3d Cir. 2007); *Glass v. BMW of N. Am.*, No. 10-5259, 2011 WL 6887721, at *3 (D.N.J. Dec. 29, 2011) (same).  "[T]he Act should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994).  However, "breach of contract is not *per se* unfair or unconscionable . . ." and "alone does not violate a consumer

protection statute." *Id.* at 462 (citing *D'Ercole Sales v. Fruehauf Corp.*, 501 A.2d 990, 998 (N.J. Supp. Ct. App. Div. 1985)).

Claims brought under the NJCFA "are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan 14, 2008). Accordingly, Plaintiffs must plead each element of a NJCFA claim with the requisite specificity to "place the defendant on notice of the [unlawful] conduct for which it is charged." *See Frederico*, 507 F.3d at 200. Specificity has been further described by the Third Circuit as the "date, place or time of the fraud" or some "alternative means of injecting precision and some measure of substantiation into [the] allegation[s] of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d. Cir. 2004) (internal quotations and punctuation omitted). "Plaintiffs must also allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

To satisfy the specificity requirement of Rule 9(b), NJCFA claims also cannot "contain collectivized allegations against 'defendants'" because "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statement to 'defendant.'" *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999). "A plaintiff must plead fraud with particularity with respect to each defendant [to] inform each defendant of the nature of its alleged participation in the fraud." *Id.* In some circumstances, however, collective pleadings of fraud may be appropriate where "defendants are…similarly situated and…engage in similar…conduct." *Lind v. New Hope Prop., LLC*, No. 09-3757, 2010 WL 1493003, at *4 (D.N.J. Apr. 13, 2010).

### a.   Count One against Option One

In ruling that Plaintiffs' NJCFA claim as pled in their First Amended Complaint was not

sustainable against Option One, this Court previously ruled:

> "These allegations, without more, cannot sustain a claim under the NJCFA.
> Plaintiffs claim that Option One knew or should have known about the terms of
> MTLC's mortgage loan. However, the heightened pleading requirements of Rule
> 9(b) require more particularity. Plaintiffs do not allege what Option One knew or
> how that knowledge sufficiently tied Option One to the mortgage loan prior to
> assignment…Plaintiffs make no allegations of *why* Option One should have
> known about Plaintiffs' financial situation. Plaintiffs also fail to identify *how*
> specific misrepresentations Option One made with regards to the mortgage loan
> harmed Plaintiffs or were illegal- requirements of a valid claim under the
> NJCFA."

(D.E. No. 57 at 11).  In sum, Plaintiffs' First Amended Complaint failed to demonstrate, with the

required particularity, how Option One was involved in the negotiation of the mortgage note,

why Option One should have been aware of the alleged misrepresentations made by MTLC, and

why Option One should have been aware of Plaintiffs' financial situation.  Given the Court's

prior analysis, the sufficiency of Plaintiffs' allegations with respect to the mortgage note

necessarily turns on the degree to which Plaintiffs' Second Amended Complaint demonstrates

how Option One was involved in the negotiation and execution of the note.

### i.   Violation of the NJCFA Regarding the Mortgage Note

Regarding the negotiations and execution of the note, Plaintiffs allege that Option One

(and other Defendants) "made false promises and misrepresentations to the [P]laintiffs

concerning the material terms of the subject mortgage note," including "false promises and

misrepresentations about the amount of the monthly payments, interest rate, type of mortgage

and the cost of financing" and that "[t]he [P]laintiffs reasonably relied on the misrepresentations

of [D]efendants aforesaid." (Sec. Am. Compl. ¶¶ 138, 140).[6]  According to Plaintiffs, "Option One acquired the [P]laintiff's [sic] mortgage note from MTLC immediately upon closing," (*id*. ¶ 39), thereby establishing that Option One was not directly involved in the negotiation, execution or closing of the mortgage note.  Indeed, Plaintiffs' Second Amended Complaint describes the negotiations as being only between Plaintiffs and MTLC.  (*Id*. ¶¶ 11-15).

The Second Amended Complaint also does not include any allegations that Option One made any misrepresentations or engaged in any other conduct that is prohibited by the NJCFA prior to the closing of the mortgage note.  Indeed, in their opposition brief, Plaintiffs do not argue or point to any allegations in their Second Amended Complaint that demonstrate, with the particularity required by Rule 9(b), how Option One violated the NJCFA with respect to the mortgage note.  Instead, Plaintiffs seek to attach NJCFA liability to Option One (relative to the mortgage note) vicariously by alleging that "[i]n 2006 and 2007, MTLC was an agent of [D]efendant Option One and was authorized to act on behalf of…Option One," (*id*. ¶ 12), alleging that "Netco was an agent of…Option One and was authorized to act on behalf of and had the authority to legally bind…Option One in any business transaction with a mortgagor including the [P]laintiffs."  (*Id*. ¶ 29).  These allegations are the type of factually unsupported legal conclusions that a court cannot accept as true.  *See Iqbal*, *556 U.S.* at 679.

Option One argues in their moving brief, and this Court agrees, that while "a court must view allegations in a complaint as true in a motion to dismiss, it (a court) is not compelled to accept unwarranted inferences, unsupported conclusions or *legal conclusions disguised as factual allegations*."  (D.E. No. 65-1, Option One's Moving Brief ("Option One Mov. Br."), at

---

[6] The Court previously concluded that the allegations Plaintiffs make in paragraph No. 121 of their First Amended Complaint, which are identical to the paragraph No. 138 of their Second Amended Complaint, lacked the requisite specificity required by Rule 9(b), as it lumps Option One with multiple other Defendants and fails to identify with particularity the acts or omissions by Option One that were violative of the NJCFA. (*See* D.E. No. 57 at 11).

33 (quoting *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007)); *see also*, *Skypala v. Mortgage Elec. Registration Sys.*, 665 F Supp. 2d 451, 456 (D.N.J. 2009) ("[A] court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.").

Without having pled facts that indicate that Option One and MTLC and/or Netco had an express principal/agent relationship, in order to impute MTLC and/or Netco's alleged misrepresentations to Option One and thereby allege a violation of the NJCFA by Option One, Plaintiffs must demonstrate the existence of an apparent agency relationship between Option One and MTLC and/or Netco. *See Huelas v. Wells Fargo Home Mortg., Inc.*, No. 11–7250, 2012 WL 3240166, at *4 (D.N.J. Aug. 7, 2012). To prove the existence of apparent agency, Plaintiffs must plead facts showing that: (1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances. *Id.* (citing *Mayflower Transit, LLC v. Prince,* 314 F. Supp. 2d 362, 374 (D.N.J.2004)). When facts supporting apparent agency are alleged, a court must then examine the "totality of the circumstances" to determine whether an apparent agency relationship existed even though the principal did not have direct control over the agent. *Id.*

Regarding an apparent agency relationship between Option One and MTLC and/or Netco, Plaintiffs do not allege any pre-closing conduct by Option One that led them to believe that either MTLC or Netco were agents for Option One and that any such conduct by Option One induced Plaintiffs to enter into the mortgage agreement. In fact, according to the averments in their Second Amended Complaint, Plaintiffs did not become aware of Option One's existence until at the earliest, the closing, when Netco presented them with the allonges that stated that

their mortgage payments were to be made to Option One.  (*See* Sec. Am. Compl. ¶¶ 35-37).  Plaintiffs do not allege that they had any knowledge of Option One's existence, much less that Option One was involved in the mortgage note transaction prior to the closing.  Plaintiffs' first mention of having contact with Option One is as follows: "[f]ollowing the closing, the [P]laintiffs advised [D]efendant Option One that MTLC promised them that they could refinance after six months."  (Sec Am. Compl. ¶ 55).

If Plaintiffs' first contact with Option One did not occur until after the closing, it is logically impossible for Option One to have engaged in conduct that the Plaintiffs could have interpreted as evincing a principal/agent relationship between Option One and MTLC and/or Netco that Plaintiffs could have reasonably relied on.  Consequently, Plaintiffs have failed to plead sufficient facts to support their assertions that MTLC and Netco were agents for Option One and have therefore failed to explain Option One's involvement in the mortgage note transaction.  As a result, the Court grants Option One's motion to dismiss Plaintiffs' NJCFA claim pertaining to the negotiation and execution of the mortgage note.

### ii.   Violation of the NJCFA Regarding the Forbearance Agreement

The Court must next determine whether Plaintiffs have pleaded their NJCFA claim, with respect to the forbearance agreement, with the heightened pleading requirements of Rule 9(b).  In Count I, Plaintiffs allege that "Defendants GRP and Option One made false representations about the terms and conditions of the Forbearance Agreement entered into with the [P]laintiffs."  (*Id.* ¶ 139).  Additionally, Plaintiffs make general allegations against Option One with respect to its alleged violations of the terms of the forbearance agreement, including alleging that Option One:

- continued to prosecute the foreclosure action without informing Plaintiffs of same, (*id.* ¶ 104-05);

- intentionally failed to notify the Plaintiffs of its intention to enter final judgment in the foreclosure action, (*id.* ¶ 107);

- obtained a Writ of Execution against Plaintiffs' property for the purpose of selling the property at a Sheriff's sale, (*id.* ¶ 108);

- failed to send a copy of the final judgment or Writ of Execution to the Plaintiffs as required by New Jersey law, (*id.* ¶ 110-11);

- was aware or should have been aware that the forbearance agreement prohibited it from prosecuting the foreclosure action, (*id.* ¶ 112);

- "deceived the plaintiffs about discontinuing the foreclosure action in order [to] induce the plaintiffs to overpay on their mortgage note and/or to acquire the plaintiff's property by false means" [sic], (*id.* ¶ 115).

Option One argues that Plaintiffs' NJCFA claim with respect to the forbearance agreement must be dismissed for four reasons: 1) Plaintiffs do not allege any unlawful conduct attributable to Option One; instead Plaintiffs' allegations sound in breach of contract; 2) Plaintiffs' allegation that GRP was an agent for Option One is not pled with the particularity required by Rule 9(b); 3) Plaintiffs lump Option One with GRP in a conclusory manner with respect to the alleged misrepresentations about the terms of the forbearance agreement; and 4) Plaintiffs do not allege what damages arise from the forbearance agreement (as opposed to the mortgage note). (Option One Mov. Br. at 37-39).

The Court finds that Plaintiffs failed to plead a NJCFA claim with the requisite specificity required by Rule 9(b). Plaintiffs' allegation that GRP was an agent for Option One fails for the same reasons that their allegation that MTLC and Netco were agents for Option One fails: Plaintiffs make only a bald assertion of an agency relationship without providing any factual basis. Consequently, Plaintiffs' attempt to vicariously attribute unlawful conduct to Option One based on the alleged misrepresentations made by GRP with respect to the forbearance agreement fails for lack of specificity as required by Rule 9(b).

With respect to the forbearance agreement, the allegations that Plaintiffs make directly against Option One sound primarily in breach of contract, as opposed to satisfying the particularity requirement for pleading the unlawful conduct element of a NJCFA claim. (*See, e.g.*, Sec Am. Compl. ¶ 104 ("During the pendency of the [f]orbearance [a]greement, [D]efendant Option One…violated the terms of the agreement by continuing the foreclosure action against the [P]laintiffs.")). These allegations, without more, are not sufficient to establish a viable claim under the NJCFA. *See Daloision v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 710 (D.N.J. 2010) ("[T]he breach of an enforceable contract does not constitute a violation of the CFA.") (citing *Richardson v. Standard Guar. Ins. Co.,* 371 N.J. Super. 449, 470 (App. Div. 2004)).

To the extent that a few of the allegations Plaintiffs make directly against Option One that sound in fraud, (*see* Sec Am. Compl. ¶¶ 101, 106, 115), could *arguably* satisfy the heightened pleading standard for the unlawful conduct element of their NJCFA claim, Plaintiffs' NJCFA claim with respect to the forbearance agreement ultimately fails due to Plaintiffs' failure to articulate any losses that they sustained as a result of the forbearance agreement. Paragraph 142, quoted below, only articulates losses that the Plaintiffs allegedly suffered as a result of the mortgage note:

> As a proximate result of the acts and omissions by [D]efendants the [P]laintiffs have sustained an ascertainable loss including but not limited to the unwarranted preliminary late fees and interest in January 2007 of $5,526.44, closing costs of $9,440, the mortgage arrears of $240,000, expenses associated with default and the difference between the finance cost of the mortgage the [P]laintiff's had with that which MTLC sold them of approximately $150,000.

Here, Plaintiffs specifically identify their losses as being related to the mortgage note that MTLC sold them. Plaintiffs do not make mention of any unwarranted principle payments, fees, interest or other losses that they sustained as a result of the *forbearance agreement*. The alleged

ascertainable loss that Plaintiffs articulate relates exclusively to the mortgage note, not the forbearance agreement.   Consequently, Plaintiffs have failed to allege, with the requisite particularity an essential element, *i.e.* an ascertainable loss, of their NJCFA claim against Option One, with respect to the forbearance agreement.

### b.  Count I Against Netco

In their opposition brief, Plaintiffs do not assert any arguments in support of their NJCFA claim against Netco.  In addition to alleging in the same conclusory manner as they did against Defendants MTLC and GRP that Netco was an agent for Option One, the Second Amended Complaint contains only five paragraphs that make mention of Netco—all in the context of Netco's alleged involvement in the closing of the mortgage note.  (*See* Sec. Am. Compl. ¶¶ 29-34).   According to Plaintiffs, Netco was an agent for Option One; attended the closing of the mortgage note; presented the Plaintiffs with an adjustable rate mortgage in the amount of $323,000 (payable to MTLC with an interest rate of 9.7% and initial monthly payments of $2,700); failed to explain why the terms of the note presented at the closing were significantly different from the terms of the note the Plaintiffs allege had been promised by MTLC; and coerced Plaintiffs into signing the adjustable rate mortgage note.   (*Id.*).   Netco argues that Plaintiffs' failure to specifically name it in their NJCFA claim is fatal to their claim because without having named Netco, Plaintiffs have failed to meet the heightened pleading requirements of Rule 9(b).  (D.E. No. 64, Netco's Moving Brief ("Netco Mov. Br.") at 13).

The Court agrees with Netco that Plaintiffs have fallen woefully short in alleging a NJCFA claim against Netco.  Indeed, Plaintiffs do not assert any arguments in support of their NJCFA claim against Netco in their opposition brief.  A review of the Second Amended Complaint reveals that Plaintiffs make minimal, if any, allegations against Netco.  Count I does

17

not mention Netco by name nor does it otherwise ascribe any unlawful conduct to Netco.  The three paragraphs in Count I of the Second Amended Complaint that could be read to infer Netco as one of the "[D]efendants" mentioned, (*see* Sec. Am. Compl. ¶¶ 140-142), also fail because they do not put Netco on notice of what *specific* proscribed conduct it engaged in.  Rule 9(b) requires a plaintiff to plead with particularity so that a defendant is put on notice of the fraudulent claims he or she is accused of making.  The general allegations that do mention Netco are likewise insufficient to sustain a claim under NJCFA as those allegations do not articulate, with particularity, the alleged fraudulent behavior of Netco as required under the NJCFA.  In fact, Plaintiffs fail to allege that Netco's conduct was unlawful or otherwise prohibited by the NJCFA.   Generalized, non-specific allegations such as these do not satisfy the "date, place or time" requirement of a Rule 9(b) pleading, nor does it "injec[t] precision and some measure of substantiation into [the] allegatio[n] of fraud."  *See Lum*, 361 F.3d at 224.  Accordingly, Count I of the Second Amended Complaint against Netco is dismissed pursuant to Rule 9(b) for failure to meet the heightened pleading requirements for a NJCFA claim.

### 2)  Count II—Common Law Fraud

Plaintiffs also allege that the actions of "[D]efendants constitute common law fraud" because [t]he misrepresentations made by the [D]efendants caused [P]laintiffs to enter into the mortgage transactions."  (Sec. Am. Compl. ¶ 144).  In support of its common law fraud claim, Plaintiffs rely on the same allegations and arguments that they asserted in support of their NJCFA claim, stating: "The [P]laintiff's [sic] allegations as detailed above, state a cause of action for common law fraud.  Again, the [D]efendant[7] intentionally misrepresented its loan product for the purpose of inducing the [P]laintiffs to accept something they did not want and

---

[7] Plaintiffs fail to specify which "[D]efendant" they are referring to here.  Consequently, the Court is left to speculate.

which cost them significantly more." (D.E. No. 66, Plaintiffs' Opposition Brief ("Pl. Opp. Br.") at 25). Plaintiffs further contend that "the [D]efendant[8] misrepresented the terms of the (forbearance) agreement to the plaintiff [sic] by failing to advise them of a balloon payment and entering final judgment in contravention of the agreement, knowing that its statement was false, intending for the plaintiffs to rely on them which the plaintiffs reasonably did and it resulted in great harm." (*Id.*). Option One argues that Plaintiffs' common law fraud claim should be dismissed—for a third time—because it still has not been pled with the particularity required by Rule 9(b). (Option One Mov. Br. at 33).

### Count II Against Option One

The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Claims of common law fraud are subject to the pleadings standards of Rule 9(b); therefore, the "circumstances constituting fraud" must be pleaded with sufficient particularity. Fed. R. Civ. P. 9(b).

### i.    Regarding the Mortgage Note

With respect to the mortgage note, the Court concludes that Plaintiffs have failed to comply with the heightened pleadings requirements of Rule 9(b) for substantially the same reasons that Plaintiffs' NJCFA claim is deficient. First, as discussed at length, *supra*, Plaintiffs' factually unsupported conclusion that MTLC and/or Netco acted as an agent for Option One does not satisfy the heightened pleading requirements of Rule 9(b), and therefore, Plaintiffs have no way of connecting Option One to the negotiation and ultimate closing of the mortgage note.

---

[8] *See* FN 5, *supra*.

Consequently, with respect to the mortgage note, Plaintiffs' common law claim against Option One cannot be sustained.

### ii.    Regarding the Forbearance Agreement

With respect to the forbearance agreement, Count II also fails for lack of particularity as required by Rule 9(b).    Plaintiffs claim "[D]efendant" misrepresented the terms of the forbearance agreement.   (Sec. Am. Compl. ¶¶ 95-96).   However, Plaintiffs fail to allege the nature of the misrepresentation, a requirement of any fraud claim.   *See* Fed. R. Civ. P. 9(b). Plaintiffs also fail to assert what specific material misrepresentations by Option One were made with the intention that the Plaintiffs would rely on them, another required element of any fraud claim.   *Gennari,* 691 A.2d at 367.   All the Plaintiffs have done in Count II of their Second Amended Complaint is recite the requisite elements of fraud without averring specific facts to support their claim.

Plaintiffs' common law fraud claim also cannot be saved by the general factual allegations that are attributed to Option One.   (*See* Sec. Am. Compl. ¶¶ 101, 103-06, 107-115). To the extent that these allegations may support a claim for breach of the contract, they are insufficient to sustain a claim for fraud, as they do not contain particularized allegations that Option One misrepresented any material fact that the Plaintiffs relied upon in entering into the forbearance agreement.    In fact, of the above-referenced allegations that articulate representations allegedly made by Option One, Plaintiffs do not allege that any of these representations were made *prior* to entering into the forbearance agreement.   For example, of the representations allegedly made concerning the forbearance agreement, the only representation that, on its face, reads as a misrepresentation is as follows: "Defendants Option One and GRP told the [P]laintiffs not to defend the foreclosure complaint while the forbearance agreement was

in effect and *promised that it would not prosecute the foreclosure action if the [P]laintiffs made the required payments under the terms of the forbearance agreement*."  (*Id.* ¶ 101) (emphasis added).

It is only the second portion of the above quoted statement (considering other allegations by Plaintiffs that Option One continued to prosecute the foreclosure action) that can be viewed as a misrepresentation.  However, Plaintiffs fail to state when this alleged misrepresentation was made and by whom.  The Court is left to speculate as to whether it was Option One, GRP or both who promised not to prosecute the foreclosure action.  Additionally, without knowing when this alleged misrepresentation was made, *i.e.*, whether it was made before or after Plaintiffs entered into the forbearance agreement, the Court is at a loss as to whether the alleged misrepresentation induced them to enter the forbearance agreement or to what other extent Plaintiffs reasonably relied on this statement to their determinant.  Thus, Plaintiffs have failed to assert what specific claims were made by Option One that they relied on, a required element of any fraud claim.  Accordingly, with respect to the forbearance agreement, Count II of the Second Amended Complaint against Option One is also dismissed pursuant to Rule 9(b).

### i.    Count II Against Netco

As stated previously herein, Plaintiffs' Opposition Brief does not assert any arguments in support of their fraud claims against Netco.  Plaintiffs' entire argument in support of its fraud claims is directed at Option One (and GRP).  (*See* Pl. Opp. Br. at 14-25).  To the extent that Plaintiffs rely on the minimal allegations attributed to Netco in the Second Amended Complaint, (*see* Sec. Am. Compl. ¶¶ 29-34), these allegations do not contain any alleged misrepresentations by Netco that Plaintiffs maintain they relied upon in entering into the mortgage note agreement.  Plaintiffs do not contend that the failure to provide documents or the failure to explain the

discrepancies between the two mortgage loans were material misrepresentations or that Netco knew such misrepresentations were false, or that Netco made such misrepresentations with the intent to induce Plaintiffs to act. As such, Plaintiffs have not alleged facts necessary to sustain their common law fraud claim against Netco.

With respect to the forbearance agreement, the Second Amended Complaint does not contain any allegations that demonstrate that Netco was in any way involved in the consummation of that agreement. As such, the Court finds that Plaintiffs have failed to adequately plead a claim for common law fraud as to Netco, and therefore Count II against Netco is dismissed.

### B. Plaintiffs' Non-Fraud Based Claims

Pursuant to Federal Rule of Civil Procedure 12(b)(6) Option One has moved to dismiss Counts I – V and Counts VII and VIII while Netco has moved to dismiss Counts III-IX. A review of Plaintiffs' Second Amended Complaint and Plaintiffs' opposition brief reveal that Plaintiffs have made few, if any, substantive changes to Counts III-IX that would make these claims viable, nor have Plaintiffs asserted any binding or persuasive legal authority in favor of preserving Counts III – IX. Nonetheless, the Court has evaluated these claims and each will be discussed in turn.

### 3) Count III—Unconscionability

#### i. Count III Against Option One

Plaintiffs attempt to assert a cause of action for unconsionability against Option One based on Option One being the "dominant party" as the lender and therefore, being in position to dictate the terms of the forbearance agreement. (Pl. Opp. Br. at 25-26). Option One reiterates its argument from its previous motion to dismiss, that Plaintiffs' unconscionability claim fails, as a

matter of law, because unconscionability may only be pled as an affirmative defense and not as an affirmative claim for damages.  (Option One Mov. Br. at 14-15; D.E. 51-5, Option One's Motion to Dismiss Plaintiffs' First Amended Complaint at 18).

"[C]ourts may refuse to enforce contracts that are unconscionable."  *Saxon Constr. & Mgmt. Corp. v. Masterclean, Inc.*, 641 A.2d 1056, 1058 (N.J. Super. Ct. App. Div. 1994).  A claim for unconscionability requires two elements: "(1) unfairness in the formation of the contract, and (2) excessively disproportionate terms."  *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 920 (N.J. Super. Ct. Ch. Div. 2002).  To survive a 12(b)(6) motion, Plaintiffs must plausibly demonstrate "some overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms."  *Howard v. Diolosa*, 574 A.2d 995, 999 (N.J Super. Ct. App. Div. 1990).

Once again, this Court finds that Count III of the Second Amended Complaint against Option One fails, as a matter of law, because Plaintiffs assert unconscionability as a claim for damages and not just as a defense against the enforcement of a contract.  *Lind v. New Hope Prop., LLC.*, No. 09-3757, WL 1493003, at *7 (D.N.J. Apr. 13, 2010) (quoting *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 922 n.14 (N.J. Super. Ct. Ch. Div. 2002)).  Additionally, while Plaintiffs' opposition brief directs the unconscionability claim at Option One with respect to the forbearance agreement, the Second Amended Complaint only speaks of "[D]efendants" generally and does not refer specifically to the forbearance agreement.  (Sec. Am. Compl. ¶ 148).  As such, even if Plaintiffs only intended to utilize unconscionability as a shield against the enforcement of the forbearance agreement, Count III of the Second Amended Complaint still does not provide adequate factual support to "raise a right to relief above [a] speculative level."

*See Twombly*, 550 U.S. at 555.

Additionally, while Plaintiffs do have a contractual relationship with Option One with respect to the mortgage note and forbearance agreement, the Second Amended Complaint fails to assert which contract(s) should be rescinded due to unconscionability.  Plaintiffs also do not allege the bargaining disparity that existed between them and Option One that made the contract(s) unconscionable.  Therefore, Count III of the Second Amended Complaint against Option One fails even if the Plaintiffs had not requested damages, as it fails to plausibly state a claim for relief pursuant to Rule 12(b)(6).

### ii.    Count III Against Netco

As stated above, Plaintiffs do not argue their unconscionability claim against Netco. Similarly, Count III of the Second Amended Complaint does not contain any factual averments or allegations consistent with an unconscionability claim against Netco.  Like Option One, Netco also argues that Plaintiffs' unconscionability claim is not a recognized affirmative cause of action in New Jersey and therefore should be dismissed.  (Netco Mov. Br. at 11-12).  Netco also argues that this claim is also not sustainable as a shield against the enforcement of a contract with respect to Netco.  (*Id.*).

The Court finds that Plaintiffs' unconscionability claim must be dismissed as to Netco because it is not a recognized affirmative cause of action and because Plaintiffs have not averred sufficient facts to support a contractual relationship with Netco.

### 4)  Count IV—Unjust Enrichment

### i.    Count IV Against Option One

Plaintiffs argue that their unjust enrichment claim should be allowed to proceed because "[P]laintiffs made payments on a contract with [D]efendant that does not exist, since the

[D]efendant has no intention of abiding by it" and that "[D]efendant was unjustly enriched by monetary benefits conferred by the [P]laintiffs through a fraudulently induced forbearance agreement."  (Pl. Opp. Br. at 26).  Plaintiffs further allege that "as a consequence of their conduct aforesaid, [D]efendants have been unjustly enriched."  (Sec. Am. Compl. ¶ 153).  Plaintiffs apparently base this claim on overpayments on the various mortgage instruments they allege were improperly secured and administered by Option One.  (*See id.* ¶¶ 22, 23, 33, 39, 43, 65, 86, 106, 117, 142).

 Option One argues that because Plaintiffs' unjust enrichment claim in their Second Amended Complaint is identical to the unjust enrichment claim that was previously dismissed, (*compare* D.E. No. 48 ¶¶ 135-37 (Count IV of Plaintiffs' First Amended Complaint) *with* Sec. Am. Compl. ¶¶ 152-54 (Count IV of Plaintiffs' Second Amended Complaint)), the Second Amended Complaint should be dismissed for the same reason—the quasi-contractual remedy of unjust enrichment is unavailable, as a matter of law, where the parties' rights are governed by a contract.  (Def. Moving Br. at 12).

 To state a claim for unjust enrichment, a plaintiff must show that 1) at plaintiff's expense; 2) defendant received a benefit; and 3) such benefit was received under circumstances that would make it unjust for defendant to retain benefit without paying.  *Torres-Hernandez v. CTV Prepaid Solutions, Inc.*, No. 08-1057-FLW, 2008 WL 5381227, at *8 (D.N.J. Dec. 17, 2008); *see also VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).  Plaintiffs must also show that they "expected remuneration from the defendant at the time [plaintiffs] performed or conferred a benefit on [the] defendant and that the failure of remuneration enriched [the] defendant beyond its contractual right." *VRG Corp*, 641 A.2d at 526.  Under New Jersey law, Plaintiffs must plead that the Defendants were enriched in a manner not governed by any enforceable contract.  *See,*

*e.g.*, *Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 F. App'x 944, 947 (3d Cir. 2004) ("Claims for unjust enrichment and the corresponding remedy, restitution, are only supportable when the parties' rights are not governed by a valid, enforceable contract.") (citing *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716, F.2d 220, 226-27 (3d Cir. 1983)); *Minuto v. Genesis Advisory Servs.*, No. 11-3391, 2012 WL 1085807, at *12 (Mar. 29, 2012) (showing that where there is a valid contract, a claim for unjust enrichment may only be asserted to extent the defendant was enriched beyond the scope of the contract).

Here, as evinced by Plaintiffs' own factual averments, (*see* Sec. Am. Compl. ¶ 97), Plaintiffs and Option One were parties to the forbearance agreement, which is a valid and enforceable contract.  Plaintiffs have not alleged that they conferred any benefit upon Option One outside the context of the forbearance agreement.  Further, going forward, Plaintiffs' only viable claims against Option One are their breach of contract claim and breach of the implied covenant of good faith and fair dealing claims.  Consequently, because the parties' rights and obligations are governed by the forbearance agreement (a valid contract), unjust enrichment is not a viable theory of recovery for Plaintiffs.  Therefore, Plaintiffs' unjust enrichment claim fails, as a matter of law, and must be dismissed.

### ii.   Count IV Against Netco

Plaintiffs do not appear to assert their unjust enrichment claim against Netco.  (*See* Pl. Opp. Br. at 26).  To the extent that Count IV of the Second Amended Complaint seeks to include Netco among the "[D]efendants" that Plaintiffs alleged were unjustly enriched, the Court finds that Plaintiffs have not alleged that they conferred any benefit on Netco, *i.e.*, paid Netco any monies.  Therefore, Netco's motion to dismiss Count IV is granted.

**5)   Count V—Breach of Fiduciary Duty (As to Option One and Netco)**

Plaintiffs specifically name Option One and omit Netco among a list of Defendants that allegedly "owed a fiduciary duty to the [P]laintiffs."  (Sec. Am. Compl. ¶ 156).  The Second Amended Complaint also does not contain any factual averments that, taken as true, support the conclusion that Option One or Netco owed Plaintiffs a fiduciary duty, nor does Plaintiffs' opposition brief posit any arguments in favor of their claim for breach of fiduciary duty.  Both Option One and Netco argue that Plaintiffs have failed to state a claim for breach of fiduciary duty because Plaintiffs have not and cannot allege facts demonstrating that Defendants owed them a fiduciary duty.  (*See* Netco Mov. Br. at 13; Option One Mov. Br. at 19).

A fiduciary duty arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.  *F.G. v. MacDonell*, 696 A.2d 697, 703-04 (N.J. 1997) (stating "[t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position").  "The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care [,] [and] [,] [a]ccordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship."  *Id.* (citing RESTATEMENT (Second) OF TRUSTS §§ 170, 174 (1959); RESTATEMENT (Second) OF TORTS § 874 (1979)).

Moreover, a party cannot generally "state a claim for breach of fiduciary duty based solely on . . . allegations . . . which reflect nothing more than a debtor-creditor relationship." *Abulkhair v. Citibank & Assocs.*, 434 F. App'x 58, 63 (3d Cir. 2011).  Generally, a fiduciary duty is presumed not to exist in a debtor-creditor relationship.  *See Paradise Hotel Corp. v. Bank of N.S.*, 842 F.2d 47, 53 (3d Cir. 1988) ("It ordinarily would be anomalous to require a lender to act

as a fiduciary for interest on the opposite side of the negotiating table.") (internal quotations omitted). However, certain "special circumstances" where the creditor "knows or has reason to know that the customer is placing his trust and confidence in the [creditor] and relying on the [creditor] so to counsel and inform him" may give rise to a fiduciary duty. *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

Given the absence of allegations in the Second Amended Complaint that evince a fiduciary relationship between Plaintiffs and Defendants, the Court finds, as it did previously, (*see* D.E. No. 57 at 21, 22), that Plaintiffs' claim for breach of fiduciary duty must be dismissed.

### 6) Count VI—Breach of Good Faith and Fair Dealing (Netco Only)[9]

Plaintiffs have not posited any arguments in support of Count VI as to Netco, nor have they presented any additional allegations in their Second Amended Complaint in support of a contractual relationship with Netco. Netco argues that Count VI should be dismissed because Netco and Plaintiffs did not have a contractual relationship. (Netco Mov. Br. at 15).

Every contract entered into under New Jersey law contains an implied covenant of good faith and fair dealing. *Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010). "The party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (internal quotations omitted). A plaintiff may be entitled to relief for violation of this covenant if the defendant acts with ill motives to destroy the plaintiff's reasonable expectations.

---

[9] Because Option One has not moved for dismissal of Count VI of Plaintiffs' Second Amended Complaint, the Court has no cause to disturb its previous ruling to allow this claim to proceed with respect to Option One.

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). "Bad motive" by the defendant is essential, and "an allegation of bad faith or unfair dealings should not be permitted to be advanced in the abstract and absent improper motive." *Id.* However, "the doctrine of good faith and fair dealing cannot . . . create rights or obligations in the absence of a valid contract." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 390 (D.N.J. 1999).

Given Plaintiffs' failure to plead facts in their Second Amended Complaint demonstrating a contractual relationship with Netco, the Court has no grounds to disturb its previous ruling dismissing Plaintiffs' claim for breach of the covenant of good faith and fair dealing with respect to Netco. Thus, Netco's motion to dismiss Count VI of Plaintiffs' Second Amended Complaint is granted.

### 7) Count VII—Violations of the New Jersey Home Ownership Security Act ("NJHOSA")

Plaintiffs' Second Amended Complaint restates this claim verbatim as it has been presented in two prior iterations of their complaint. (compare D.E. No. 1-1, Plaintiffs' Original Complaint, ¶¶ 103-08 and D.E. No. 48, Plaintiffs' First Amended Complaint ¶¶ 146-51 with Sec. Am. Compl. ¶¶ 163-68). In their opposition brief, Plaintiffs argue that "Truth-in-Lending Statement improperly calculated the APR. When properly calculated it should have been higher, which misled the [P]laintiffs by showing a lower Finance Charge and Total of Payments. The [P]laintiff contests the calculations of the [D]efendant and should be permitted to litigate this cause of action." [sic] (Pl. Opp. Br. at 25). Option One reiterates the argument it made in its prior motions to dismiss that instead of stating how Option One actually violated the NJHOSA, Plaintiffs simply regurgitate the language of the statute, (Option One Mov. Br. at 20), and in doing so, Plaintiffs have again failed to remedy the deficiencies to this claim that this Court

identified in its two prior opinions dismissing this claim.  (*See* D.E. No. 57 at 27; D.E. No. 46 at 18-19).

To the extent that Count VII can be read to implicate Netco, Netco argues for dismissal on the basis that the NJHOSA does not apply to it because Netco is not a "creditor" as contemplated by NJHOSA as Netco "did not extend consumer credit and did not broker the loan under the definition as it did not solicit, process, place, negotiate the loan, or close the loan in Netco's name with funds provided by others."  (Netco Mov. Br. at 17).

The intent of NJHOSA is to "prohibit practices in the making of home mortgage loans." *DaSilva v. Aries Fin., LLC*, No. 08-19547, 2011 WL 235 8513, at *4 (Bankr. D.N.J. June 9, 2011).  The act designates three types of loans - home loans, covered home loans, and high cost home loans – and "subjects creditors who issue them . . . to increasing levels of regulation."  *Id.* (citing Baher Azmy & David Reiss, *Modeling a Response to Predatory Lending: The New Jersey Home Ownership Security Act of 2002*, 35 RUTGERS L.J. 645, 671 (2004)).

According to the NJHOSA:

> "[c]reditor" means a person who extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments, and to whom the obligation is payable at any time. Creditor shall also mean any person brokering a home loan, which shall include any person who directly or indirectly solicits, processes, places, or negotiates home loans for others or who closes home loans which may be in the person's own name with funds provided by others and which loans are thereafter assigned to the person providing the funding of such loans, provided that creditor shall not include a person who is an attorney providing legal services to the borrower or a person or entity holding an individual or organization insurance producer license in the line of title insurance or a title insurance company, as defined by subsection c. of section 1 of P.L.1975, c.106 (C.17:46B-1), or any officer, director or employee thereof, providing services in the closing of a home loan who is not also funding the home loan and is not an affiliate of the creditor or an assignee that is subject to the provisions of section 6 of this act.

N.J.S.A. § 46:10B-24.

### i.   Count VII Against Option One

Here, Plaintiffs do not state which Defendant miscalculated the APR. A review of Plaintiffs' Second Amended Complaint reveals that it does not contain any allegations or factual averments that articulate that a Truth-In-Lending statement miscalculated the APR, let alone that Option One was responsible for said miscalculation. Once again, the Court agrees with Option One and finds that Plaintiffs have failed to remedy the deficiencies identified in their original Complaint and First Amended Complaint. Rather, Plaintiffs restate verbatim, the NJHOSA claim that this Court previously dismissed. (*See* D.E. No. 57 at 27; D.E. No. 46 at 18-19). Accordingly, Count VII of the Second Amended Complaint against Option One is dismissed.

### ii.   Count VII Against Netco

Again, Plaintiffs do not posit any arguments or point to any factual averments in the Second Amended Complaint that, taken as true, would support the conclusion that Netco was a creditor. As such, the Court again finds that Plaintiffs have not plausibly established that Netco is a "creditor" as defined by the NJHOSA. The NJHOSA applies to "a person who extends consumer credit" or "any person brokering a home loan, which shall include any person who directly or indirectly solicits, processes, places, or negotiates home loans." N.J.S.A. § 46:10B-24. As such, Plaintiffs' claim is insufficient and conclusory. Thus, Count VII of the Amended Complaint against Netco fails to plausibly establish that Netco is covered by the NJHOSA and, therefore, is dismissed.

### 8)   Count VIII—Predatory Lending (Against Option One and Netco)

Plaintiffs argue that they should "have the opportunity to establish the existence of a legally cognizable claim." (Pl. Opp. Br. at 28). Option One and Netco argue, in support of the

31

dismissal of Count VIII, that predatory lending is not an independent cause of action under New Jersey law. (Netco Mov. Br. at 18; Option One Mov. Br. at 22).  New Jersey courts have construed predatory lending claims to be the functional equivalent of claims brought under the Truth-In Lending Act, the NJCFA, the NJHOSA, common law fraud, the Civil Rights Act, the Fair Housing Act, and the Law Against Discrimination.  *See, e.g.*, *Assocs. Home Equity Servs., Inc. v. Troup*, 778 A.2d 529, 537-38 (N.J. Super Ct. App. Div. 2001).

Plaintiffs have already pleaded claims under the NJCFA, the NJHOSA, and common law fraud that this Court has now dismissed for the third time.  The Second Amended Complaint does not provide adequate factual support to sustain a claim under any of the other causes of action that courts have read into a charge of predatory lending.  Therefore, the Court finds that although a claim for predatory lending can be construed as the functional equivalent of a different, independent cause of action, Plaintiffs have not plausibly alleged facts sufficient to allow this court to make such an inference.

### 9)  Count IX Breach of Contract (Against Netco Only)[10]

Plaintiffs' breach of contract claim and argument in support thereof is only directed at Option One (and GRP).  (*See* Pl. Opp. Br. at 28-31; Sec Am. Compl. ¶¶ 150-154).  As such, to the extent Count IX can be construed to apply to Netco, Netco's motion to dismiss Count IX of Plaintiffs' Second Amended Complaint is granted since Plaintiffs have failed to allege any facts against Netco.

---

[10] Because Option One has not moved for dismissal of Count IX of Plaintiffs' Second Amended Complaint, the Court has no cause to disturb its previous ruling to allow this claim to proceed with respect to Option One.

**V.      Conclusion**

Because Plaintiffs have had three opportunities to adhere to the applicable pleading standards but have failed to do so, the Court finds that any subsequent amendments would be futile as well as inequitable with respect to Option One and Netco.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Therefore, for the foregoing reasons, the Court GRANTS Option One's motion to dismiss Counts I-V and Counts VII & VIII of Plaintiffs' Second Amended Complaint, *with prejudice*.  The Court also GRANTS Netco's motion to dismiss Counts I-IX of Plaintiffs' Second Amended Complaint, *with prejudice*.

An accompanying Order shall follow.


_s/Esther Salas_____
**Esther Salas, U.S.D.J.**